### In re WEST COAST CABINET WORKS, Inc.

#### No. 44249–W, Bkcy.

United States District Court
S. D. California, Central Division.
Aug. 4, 1950.

2. Hiatt v. Compagna, 5 Cir., 178 F.2d 42.

Leslie S. Bowden, Los Angeles, Cal., for trustee.

Fred N. Howser, Attorney General, James E. Sabine, Daniel N. Stevens, Deputy Attorneys General, for State of California.

Craig, Weller & Laugharn, Los Angeles, Cal., Hubert F. Laugharn, Thomas Tobin, Los Angeles, Cal., amici curiæ.

WEINBERGER, District Judge.

The Board of Equalization of the State of California has petitioned to review an

order of the Referee in Bankruptcy permanently enjoining the said Board from enforcing as against the trustee or the bankrupt estate herein any of the provisions of the California Sales and Use Tax Law[1] in connection with certain sales made by said trustee in bankruptcy.

This review has been the subject of several hearings before this court and its submission for decision has been twice vacated and the same reopened at the insistence of counsel for the filing of further briefs; thereafter an amended certificate was filed by the Referee; additional briefs were requested by the court; an amicus curiae brief has been presented; the final hearing in this matter was had the latter part of 1949.

The bankrupt herein, West Coast Cabinet Works, Inc., a corporation, was engaged in the business of manufacturing and selling cabinets and filed sales tax returns and paid sales tax under the California Sales and Use Tax Law. On February 5, 1946, the corporation filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and George T. Goggin as receiver of the debtor, was authorized to conduct the business and sell the same as a going concern; he applied to said Board for, and was granted a seller's permit to engage in the business of selling tangible personal property, and during a period of a little over a month completed certain orders which the debtor had on hand, sold the completed articles and paid sales tax on his retail sales as provided in said Sales and Use Tax Law.

On March 12, 1946, the West Coast Cabinet Works, Inc., was adjudicated bankrupt, and George T. Goggin as the appointed trustee was authorized to conduct the business of the bankrupt. As trustee in bankruptcy, Goggin applied for and was granted a permit to engage in the business of selling tangible personal property.

The evidence shows that between March 12, 1946, and March 22, 1946, in conduct of said business, the trustee made sales at retail and also sales for resale, and paid sales taxes. No tax is claimed by the Board to be due for such period.

On March 22, 1946, he was directed by order of the Referee to sell the assets of the estate either at public auction or private sale.

Subsequent to the order to sell in liquidation, the trustee, in addition to various sales for resale, made at least twenty sales which were listed on his books as sales at retail; on ten of the twenty sales the trustee "collected sales tax reimbursement",[2] sales tax was reported and paid on all sales except certain sales made on March 29, 1946, as hereinafter set forth.

On said date last mentioned, the trustee sold, at public auction, in open court, and subject to confirmation of court, five trucks which had been used by the bankrupt in the conduct of his business for deliveries; each of said five trucks was sold to a different person; no "sales tax reimbursement" was collected; the sales were confirmed by the court; the amounts received from such sales were not included in any sales tax return.

The Board made an additional determination of taxes due basing said assessment upon the gross receipts from the sales of the five trucks; notice of such assessment was mailed to the trustee, no petition for redetermination was filed within 30 days thereafter, whereupon a penalty of 10% was added by the Board to the amount of the tax.

The trustee petitioned for an injunction, and after a hearing before the Referee the order here sought to be reviewed was made. In said order, the Referee found that the sales of the five trucks were not made by the trustee in the course of conducting the bankrupt estate, but were made under court

---

1. This opinion deals only with the sales tax provisions of said Law. The use of the word "Law" refers to the "Sales and Use Tax Law" of the State of California, Revenue and Taxation Code, § 6001 et seq., and the sales tax provisions thereof unless otherwise indicated.

2. The language "collected sales tax reimbursement" is taken from the brief of counsel for the Board, in their statement of the facts. The use of this term, rather than "did not increase the purchase price to cover the amount of the sales tax" is not intended to have any significance in this opinion.

order in the normal administration of the estate in liquidating the assets for the benefit of creditors, subject to the confirmation of court and that the trustee was not liable to the Board for sales tax based upon said sales, and that the Board was attempting to enforce payment of the tax claimed.

There has not been raised a question as to the jurisdiction of this court to pass upon the question before us; it is of course elementary that the district courts have jurisdiction to review the orders of, the referees in bankruptcy. It is the duty of a district court, however, to examine into its own jurisdiction, whether or not the question is raised. See Associated Press v. Emmett, D.C.Cal., 45 F.Supp. 907, a decision rendered by Judge Leon R. Yankwich of this court, and cases therein cited. We believe it is also our duty to examine into the jurisdiction of the referee in bankruptcy, especially where an order restraining the enforcement of a state taxing statute is reviewed.

We have considered the question of the Referee's jurisdiction and, because we feel that the same depended upon matters which it is necessary to discuss with reference to other phases of this case, we shall set forth our views on such subject later in this opinion.

On behalf of the trustee it is contended that in making the judicial sales by reason of which the tax is sought to be imposed, he was not a "retailer"[3] within said Law; that he was not engaged in the business of making sales at retail; that it was not the intent of the Legislature that a trustee in bankruptcy making sales of the assets of a bankrupt estate, after adjudication, under order of court, in liquidation, should be considered a "retailer"; that if, under the law, such a trustee, making such sales can be held liable under the law as a "re-

tailer", the same would constitute an interference with the administration of the Bankruptcy Act; that to require the trustee herein to obtain a permit from the State Board of California as a condition to the performance of his duties under the Bankruptcy Act is beyond the authority of the State; that the tax is levied directly upon the seller, thus constituting a burden upon the trustee in the performance of his duties under the Bankruptcy Act.

The Board maintains the trustee was a retailer under two theories, the first of which is:

The trustee in bankruptcy in conducting the business of the bankrupt was a retailer within the meaning of the said Law, and the gross receipts from his sales of equipment used in the business of a retailer including the five trucks sold on March 29, 1946, must be included within the measure of the tax.

Counsel for the Board base their first contention on this theory: Congress has expressly provided by the Act of June 18, 1934, 28 U.S.C.A. § 124a,[4] now Section 960 in revised Title 28 U.S.C.A., that a trustee in bankruptcy who conducts any business shall be subject to all State taxes applicable to such business the same as if such business were conducted by an individual or corporation; that the trustee once having conducted the business and sold at retail, when he disposes of assets, under an order of court to liquidate, still retains his role of retailer in making the liquidation sales.

In support of this first contention, counsel cite Bigsby v. Johnson, 1941, 18 Cal.2d 860, 118 P.2d 289, 291, a decision of the California Supreme Court en banc. Bigsby was a printer, and as observed by the Court, already classified generally as a retailer under the California Sales and Use Tax Law when he sold one piece of used print-

---

3. Counsel in their respective briefs and argument do not indicate any views that "retailer" as used with reference to sales in California means anything different than "seller". We note a "seller" must obtain a permit to sell at retail, while the use tax provisions direct a "retailer" to register. The section defining "seller" appears to include "retailer" as far as is

pertinent to this case. We refer, of course, only to the sections as they read in 1946.

4. For convenience in quoting from cases decided before the revision of the Judicial Code, we shall refer to this section as 124a of Title 28 U.S.C.A. and as it read in 1946.

ing equipment. It was held he sold the said personal property at retail as a part of his business operations, and regardless of the fact that the property sold was not of the type usually sold by him in retail sales, he must include the gross receipts from said sale in the measure of the tax. Northwestern Pacific Railroad Co. v. State Board of Equalization, 1943, 21 Cal.2d 524, 133 P.2d 400, is also cited. In that case a railroad holding a retailer's license for its "Stores Department" sold, pursuant to a long established practice, $100,000 worth of surplus rolling stock over a period of three years. The Supreme Court stated that the case was not distinguishable from Bigsby v. Johnson, supra, holding that specific sales of a retailer could not be segregated from the bulk of its business and treated separately as isolated or occasional sales. The court also stated that even if it were to assume that the business of the railroad could be separated into two separate businesses, the sales, if considered made in the transportation business, were sufficient in number, scope and character to bring them within the purview of the taxing act.

We are referred to the legislative history of section 124a in the cases of Boteler v. Ingels, 1939, 308 U.S. 57, 60, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442 and Palmer v. Webster & Atlas Bank, 1941, 312 U.S. 156, 163, 61 S.Ct. 542, 85 L.Ed. 642.

The Congressional Record, 73rd Congress, 2d session, p. 6656, shows us that the bill, prior to its amendment on the floor of the House, contained the word "receiver" only, and a statement was made at that time that it was directed toward receivers of corporations "appointed to run the business." The amendment containing the words "liquidator, referee, trustee or other officer or agent" was offered and agreed to without discussion. Section 124a as passed on June 18, 1934, read as follows: "Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation: *Provided, however,* That nothing in this section contained shall be construed to prohibit or prejudice the collection of any such taxes which accrued prior to June 18, 1934, in the event that the United States court having final jurisdiction of the subject matter under existing law should adjudge and decide that the imposition of such taxes was a valid exercise of the taxing power by the State or States, or by the civil subdivisions of the State or States imposing the same. (June 18, 1934, ch. 585, 48 Stat. 993.)" Section 124a appears as Section 960 in Title 28 U.S.C.A. revised 1948, and now reads: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

A study of some of the reported decisions construing former section 124a of Title 28 U.S.C.A. will be of interest, not only as to its legislative history but for consideration of other points raised in the briefs and arguments in the case at bar.

In Boteler v. Ingels, 1939, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, a trustee in bankruptcy under Section 77B, 11 U.S.C.A. § 207,[5] used certain vehicles in the conduct of the business of the bankrupt; did not obtain state licenses for such vehicles, and the state assessed delinquency penalties, under the California Motor Vehicle Code providing that such fees and penalties became statutory liens on the vehicles from the due date. The referee in bankruptcy ordered the vehicles sold free and clear of liens, but permitted the State to file claims for the fees, without penalties, within thirty days or be forever barred.

5. The Court of Appeals, in its opinion at 9 Cir., 100 F.2d 915, 918, 919, in this case characterized the situation existing as "after the date of what in effect amounted to an adjudication."

The Court of Appeals, 9 Cir., 100 F.2d 915, on appeal after review in the District Court, ordered the trustee to pay the accrued fees and penalties, and alternatively, ordered that the vehicles be disposed of subject to the lien of the State for the unpaid taxes and penalties.

The Supreme Court in affirming the decision of the Court of Appeals held that the fees and penalties in issue were incurred by the trustee in operating the bankrupt business; that they were not owed by the bankrupt to the State as a "creditor" and that the State could not file proof of claim for such fees and penalties under section 57, sub. j, of the Bankruptcy Act, 11 U.S.C.A. § 93 sub. j., as a "creditor". The Court then stated that Congress, in passing section 124a of Title 28 U.S.C.A. had declared with "vigor and clarity" [308 U.S. 57, 60 S.Ct. 32] that trustees and other court appointees who operate businesses must do so subject to state taxes the same as if such businesses were conducted by individuals. The Court also observed that it need not decide whether, without legislation such as section 124a, the fact that a local business in bankruptcy was operated by a bankruptcy trustee makes the business immune from state law and valid measures for their enforcement, stating, 308 U.S. page 61, 60 S.Ct. page 32: "Clearly, means of permitting such immunity from local laws will not be read into the Bankruptcy Act * * *. A State would thus be accorded the theoretical privilege of taxing businesses operated by trustees in bankruptcy on an equal footing with all other businesses, but would be denied the traditional and almost universal method of enforcing prompt payment * * *. The Act of 1934 indicates a Congressional purpose to facilitate—not to obstruct—enforcement of State laws; the court below correctly recognized and applied this Congressional purpose and its judgment is Affirmed."

In Zimmer v. New York State Tax Commission (In re Fonda, J. & G. R. Co.) 2 Cir., 1942, 126 F.2d 604, certiorari denied 316 U.S. 701, 62 S.Ct. 1299, 86 L.Ed. 1769, the Court of Appeals, holding that a receiver under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, must pay franchise taxes accruing while he conducted the business of the bankrupt, indicated a difference between a receiver conducting the business and a trustee in bankruptcy not conducting the business; it was noted that the duties of the former were to preserve the status quo, while those of the latter were to liquidate; to retain the franchises of the corporation for rehabilitation rather than to wind up the enterprise.

In Thompson v. State of Louisiana et al., 8 Cir., 1938, 98 F.2d 108, 111, the court, citing the cases of U. S. v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159, and People of State of Michigan, by Haggerty v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, and other cases which preceded the passage of section 124a, observed that Congress passed Section 124a for the manifest purpose of putting at rest all doubt and uncertainty in regard to whether officers appointed by the Federal courts to conduct a business should be liable for local taxes applicable to the business conducted. Further it stated: "Congress has plenary legislative control over the administration of a bankrupt estate. In re Landquist, 7 Cir., 70 F.2d 929. * * * Congress has, in the interest of justice or good will, by this Act directed the trustee to pay rather than litigate these tax claims. By the sweeping terms of this statute all doubts have been resolved in favor of the state taxes. Viewed as an administrative order affecting the conduct of the estate, no question of constitutional power is involved, but merely one of legislative policy and discretion, over which the courts exercise no power of judicial review." [6]

In re California Pea Products, D.C., 37 F.Supp. 658, is a case decided by Chief Judge Paul J. McCormick of this District, in 1941. The judgment was not appealed, and the case has been cited as authority in many subsequent cases both in this and other circuits, also by text-writers on bankruptcy, and authors of law review articles.

6. See also Fifth Street Building v. McColgan, 1941, 19 Cal.2d 143, 119 P.2d 729, 730, quoting from this case to the same effect.

In re Davis Standard Bread Co., D.C., 46 F.Supp. 841, in 1941, a decision by Judge Ben Harrison of this Distict, is also widely cited, as has been the decision of the Court of Appeals of the 9th Circuit, which affirmed the Davis Standard Bread ruling. State Board of Equalization of State of California v. Boteler, 9 Cir., 1942, 131 F.2d 386. The opinions in these three cases are of great importance to the question before us, and we shall advert to them in more detail hereinafter. In each the ruling was made that Section 124a did not apply to a trustee, who, after an adjudication, sold in liquidation under court order; it is true that the trustees in these cases had not conducted the businesses of the bankrupts, but we find no indication that any of the said decisions rested upon such fact.

Contra to the cases holding that section 124a of 28 U.S.C.A. does not apply to a trustee in bankruptcy in liquidation, we find the cases of In re Mid America Co., 31 F. Supp. 601, a decision in 1939 of the Illinois District Court, S.D., N.D. and State of Missouri v. Gleick, 8 Cir., 1943, 135 F.2d 134. In the Mid America case, the district court ruled that a trustee in bankruptcy was an employer with reference to individuals engaged by him to perform services in connection with the administration of the bankrupt estate in liquidation, and that the amounts due under the Illinois Unemployment Compensation Act were taxes within the meaning of Section 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a (4), and had priority under such section.

The Court observed, 31 F.Supp. page 606, that by specifically including "trustees in bankruptcy" in the State's definition of employing unit, is was meant that they were to be subject to the state law to the same extent as other employing units. Further, that a trustee in bankruptcy is required to pay all state and local taxes by virtue of 28 U.S.C.A. § 124a; that the contention that said section applied only to trustees who are actually carrying on the business of the bankrupt and not to liquidating trustees was unconvincing. The Court was of the opinion, 31 F.Supp. page 606: "The phrase 'conduct any business' should not receive a narrow and restricted interpretation, but should be construed to include any activity or operation in connection with the handling and management of the bankrupt estate. That this was the intention of Congress is clear from the further language of this section which makes the trustee 'subject to all State and local taxes applicable to such business * * * as if such business were conducted by an individual or corporation.' Obviously, if the bankrupts themselves liquidated their respective businesses they would each be liable for contributions with respect to services performed for them in connection with such liquidation."

In State of Missouri v. Gleick, supra, the Missouri Act expressly included a trustee, but the trustee relied upon the exemption in the Act of employment in the service of the United States or an instrumentality thereof. The Court of Appeals held that only by a "strained" construction could the trustee be held to be an instrumentality of the United States, and adopted the reasoning of the Mid America case. The Court of Appeals further stated, however, that it was influenced in its conclusion by the case of Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, where the salary of an employee of the HOLC had been held taxable under State law. In addition, it was observed by the Court, 135 F.2d at page 137: " * * * In the present case the tax, as an expense of administration of the bankrupt estate, is payable from the assets of that estate. By no stretch of the imagination may its collection be held to impose any burden whatsoever upon the United States or to limit or restrict the bankruptcy court as a department of the federal government or the trustee in bankruptcy as an agent and officer of the court, in the discharge of the duties imposed by the Bankruptcy Act."

It further appeared from the opinion, 135 F.2d page 137, that the Court also considered the premise that the state unemployment compensation laws were adopted at the invitation of the national government, observing that in such circumstances an immunity of the federal instrumentalities from taxation in the furtherance of the joint plan

should not be implied where none was expressly provided by Congress.

We are not, of course, called upon here to consider whether a trustee is an employer within state unemployment compensation acts, but we are unable to agree with the rulings in the two cases last discussed insofar as the same are based upon an application of section 124a of Title 28 U.S. C.A.

In State Board of Equalization of State of California v. Boteler, 9 Cir., 131 F.2d 386, 388, the Court remarked that the circumstance that the assets sold by the trustee in liquidation had been utilized by the bankrupt in the *conduct of a business no longer in existence* had no materiality.

In the instant case, we do not believe that the fact that the assets sold by the trustee had been utilized by the bankrupt, the receiver, the trustee in bankruptcy or any one of them in the conduct of a business had any materiality in the case before us. Section 47, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 75, sub. a, by its terms charges the trustee with the primary duty of collecting and reducing to money the property of the estate; conducting the business is not a duty of a trustee as a matter of course, but a duty which may be imposed upon him by order of court, under Section 2(5) of the Bankruptcy Act, 11 U.S.C.A. § 11(5), when such court, in the exercise of its discretion, determines such procedure to be "necessary in the best interests of the estates." In re Wiener, D.C., 7 F.Supp. 691, affirmed Brown v. Schwehm, 3 Cir., 72 F.2d 1010.

It is our view that after adjudication, when such conduct of the business has been authorized by the court, a subsequent order to sell in liquidation marks the termination of such authority, as well as the termination of the business, and is the line of cleavage between conducting the business and liquidating it. A trustee cannot then be considered as "conducting the business of the bankrupt" within the meaning of Section 2(5) of the Bankruptcy Act, 11 U.S. C.A. § 11(5), nor as "conducting any business" within the meaning of Section 124a of Title 28 U.S.C.A., and any status such

trustee may have been given by virtue of Section 124a as an "individual" or "corporation" conducting any business, is no longer to be attributed to him.

Likewise, we do not believe that the fact that the same individual, George T. Goggin, was the receiver who conducted the business, the trustee in bankruptcy who conducted the business, and the trustee in bankruptcy who sold assets of the bankrupt estate after adjudication under order of court in liquidation, has any materiality here. At no time, acting under the orders of the court, could George T. Goggin have acquired any personal status as a retailer by virtue of the acts performed under such orders.

The second theory which the Board has advanced is to the effect that if a trustee in bankruptcy makes "numerous" sales at retail, he is subject to the provisions of the California Sales and Use Tax Law, even though he had not previously conducted the business of the bankrupt, and even though the sales are made after adjudication, under order of court, and in liquidation of the bankrupt estate.

Counsel argue that the word "trustee" in Section 6005 of the Law, Revenue and Taxation Code, defining "persons" subject to the Law includes by its express terms, a trustee in bankruptcy such as the one before us; that the sales involved were retail sales, Section 6007, which the trustee concedes; that the sales were made for "benefit" within the meaning of Section 6013; that the trustee was "engaged in business" within the meaning of Section 6013, and thus was a "retailer" within the meaning of Section 6015(a).

A reading of Section 6005 does not disclose of itself a definite purpose to include "trustee in bankruptcy", and especially a trustee in bankruptcy making sales after adjudication under order of court, in liquidation. We agree, however, that the sales involved herein were retail sales, and were made for the benefit of the bankrupt estate.

Whether the bankruptcy trustee in making such sales falls within a class which the taxing statute intended to reach, and if

so, whether he can be considered a retailer under said statute, are questions this court must resolve.

Counsel have not referred to any case decided by a California court construing the word "trustee" as used in said Section; we have found none; the three decisions of Federal courts in this Circuit which we mentioned above (In re California Pea Products, supra; In re Davis Standard Bread Co., supra; State Board of Equalization of State of California v. Boteler, supra) were rendered before the word "trustee" was inserted in said Section.

It was said in Vermilya-Brown Co. v. Connell, 1948, 335 U.S. 377, at page 386, 69 S.Ct. 140, at page 145, 93 L.Ed. 76: "Words generally have different shades of meaning,[7] and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed."

At page 388 of the opinion in 335 U.S., at page 146 of 69 S.Ct. the Supreme Court observed that no definite indication of purpose to include or exclude the matter before it appeared in the law there under consideration, and the Court felt it to be its duty to construe the word discussed in its opinion "as our judgment instructs us the lawmakers, within constitutional limits, would have done had they acted at the time of the legislation with the present situation in mind."

In Pacific Co. v. Johnson, 1932, 285 U.S. 480, 495, 52 S.Ct. 424, 428, 76 L.Ed. 893, it was stated: "A taxing statute, like others, must be read as a whole, as it stands on the statute books at its applicable date, and the legislative purpose in enacting it must be taken, regardless of forms of words, to envisage the obvious consequences which flow from its operation."

It thus will be necessary, in aid of ascertaining the intent of the Legislature of California, to consider the various sections of the Sales and Use Tax Law, as well as the legislative history of the Retail Sales Act of 1933. We are concerned primarily with the Law as it stood at the time the trustee is alleged to have become liable thereunder, to-wit, 1946, and unless otherwise indicated, we shall, for facility of expression, refer to the provisions of the law as they read in 1946 by using the present tense.[8]

The Sales and Use Tax Law of California is found in the Revenue and Taxation Code of said State. Division 1 relates to property taxation. Division 2 refers to ten other types of taxes, namely: Part 1, Sales and Use Taxes, Sections 6001 to 7176, and parts 2 to 10 inclusive contain, respectively, sections relating to Motor Vehicle Fuel Tax, Use Fuel Tax, Motor Vehicle Transportation License Tax, Vehicle License Fee, Private Car Tax, Insurance Taxation, Inheritance Tax, Gift Tax, Personal Income Tax.

Most of the provisions of the present Law relating to sales tax were taken from similar provisions found in the Retail Sales Act of 1933, as amended in 1935, 1937, 1939 and 1941; the same is true of the provisions relating to use tax, which were based upon provisions of the Use Tax Act passed in 1935, and subsequently amended. In 1941, effective in 1943, the California Legis-

---

7. See Imperial Assur. Co. v. Livingston, 1931, 8 Cir., 49 F.2d 745, 748, 74 A.L.R. 1336, holding that the Bankruptcy Act defines the duties of a trustee in bankruptcy and trustee in bankruptcy does not mean an officer with the same duties as a trustee in equity. That resort must first be had to the Bankruptcy Act to ascertain through a definition of the powers and duties of such trustees, the real meaning of the terms used in the Act.

See also Manufacturers Trust Co. v. Becker, 1949, 338 U.S. 304, 311, 70 S.

Ct. 127, insolvency estates are not in a complete sense trusts.

It might also be well, in any case construing "trustee" as meaning "trustee in bankruptcy" with reference to state taxing statutes, to ascertain whether the case was decided before or after the passage of Section 124a of Title 28 U.S.C.A.

8. It is to be expressly noted that we do not refer, in our construction of the Law, to the 1947 nor 1949 amendments unless specifically stated.

lature combined most of the provisions of the two acts and the same were reinacted as the present Law and made a part of the Revenue and Taxation Code of the State of California as hereinbefore mentioned. Further amendments were made to some of the sections relating to either or both of the taxes in 1943, 1945, 1947 and 1949.

Part 1 of Division 2 of the said Code "Sales and Use Tax Law" is divided into eleven chapters. Chapter 1 contains definitions of various terms used in subsequent chapters, and Section 6002 of said chapter specifies that the definitions given in such chapter govern the construction of the Law except where the context otherwise requires;[9] it is further stated that by "sales tax" is meant the tax imposed by Chapter 2 of the Law, and by "use tax" is meant the tax imposed by Chapter 3 thereof.

Section 6005 defining "person" was originally Section 2 of the Retail Sales Tax Act of 1933, and read: " 'Person' includes any individual, firm, copartnership, joint adventure, association, * * * corporation, estate, trust, business trust, receiver, syndicate." St.1933, p. 2599, § 2(a).

The section was amended in 1935, 1937, 1939 and in 1941, to take effect in 1943, it was included as said Section 6005 of the Revenue and Taxation Code and from 1943 to 1945, the section included in its definition of "person" the following: " * * * any individual, firm, copartnership, joint adventure, association, social club, fraternal organization, corporation, estate, trust, business trust, receiver, syndicate, this State, any county, city and county, municipality, district, or other political sub-division thereof, or any group or combination acting as a unit."

In June of 1945, the section was amended to add the words "trustee" and "United States."

Section 6012 defines "gross receipts" as the total amount of the sale or lease or rental price as the case may be, of the retail sales or retailers without any deduction on account of cost of property sold, etc., cost of materials used, labor, etc., cost of transportation; includes any services that are part of the sale, any amount for which credit is allowed. Among matters not included in gross receipts are "Cash discounts allowed and taken on sales"; "Sale price of property returned by customers * *".

By succeeding sections in Chapter 1, "sale" is defined briefly as any transfer of title or possession, etc., "retail sale" a sale other than for resale.

Section 6013 of the Law defining "business" was the same in 1946 as it appeared in the Retail Sales Act of 1933, and as it appeared after being reenacted in 1941, effective 1943, as a part of the Revenue and Taxation Code.

It reads: " 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect."

Section 6014 defines "seller" as including "every person engaged in the business of selling tangible personal property the gross receipts from the retail sale of which are required to be included in the measure of the sales tax."

9. Though the fact was not mentioned in briefs or argument of counsel, it came to our attention during the preparation of this opinion that the section of the Revenue and Taxation Code defining "person", Section 19, is supplemented by Section 28 of said Code, effective May 29, 1943, reading: "As used in Division 2 of this code 'person' shall include, in addition to the items of definition contained in Section 19, trustee, trustee in bankruptcy, receiver, executor, administrator or assignee." We do not deem this amendment pertinent to the matter before us, first, because of the language of Section 6002 excluding other definitions, and also because said Section 19, when passed in 1943, was as a part of Chapter 874, p. 2697, Stats.1943, an act entitled "An act to amend Sections 7, 7305, * * * of the Revenue and Taxation Code, to add Sections 28, 7407 (naming other sections) relating to the scope of, returns under payments under, administration of, and collection of the motor vehicle fuel license tax." The provisions relating to this tax follow the Sales and Use Tax Law in said Code as Part 2 of Division 2, and contain no definition of "person".

Section 6015 of the Law defines "retailer" and subdivision (a) thereof was, in 1946, substantially the same as in 1933, though amendments to other portions of the section were made in 1935, 1937, 1939, and 1943.

It reads, in part:

" 'Retailer' includes:

"(a) Every person engaged in the business of making sales at retail or in the business of making retail sales at auction of tangible personal property owned by the person or others.

"(b) Every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use, or consumption."

Section 6051 of Chapter 2 relating to sales tax recites, in part: "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of (3% after June 30, 1945) of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state * * * ".

Except for the matter in parenthesis, the quoted portion of the Section reads as it did in 1933.

We have found but little discussion in the opinions of the California courts concerning the purpose of the California Legislature in passing the forerunner of the present Law, the Retail Sales Act, in 1933. However in that year, a tax moratorium was provided by California for owners of real property, and we find a statement in an Illinois case, Svithiod Singing Club v. McKibbin, 381 Ill. 194, 44 N.E.2d 904, that the Illinois taxing statute, which, like the California statute lays a privilege tax upon persons engaged in the business of selling tangible personal property at retail, was enacted for the purpose of relieving property from direct taxation, and placing the burden upon the merchandising business; this, for the reason as explained by the

Illinois court, that the merchandising business with its large stocks of wares needed greater police and fire protection, and benefited more greatly by being conducted under governmental protection.

That the California taxing statute was enacted pursuant to a general trend on the part of many of the States to relieve property tax burdens is indicated in a resolution of the Legislature, No. 8, Stats. 1935, 51st Session p. 2398, wherein it was stated that the necessity for property relief in California and other states was imperative, and that 26 states in an effort to provide such relief had passed laws imposing taxes based on sales of tangible personal property. The Resolution was addressed to the Congress of the United States, and requested Congress to pass legislation permitting the levy of sales tax on sales moving in interstate commerce, stating that the judicial interpretation of the Federal Constitution prohibiting such a levy had resulted in a discrimination against local merchants. The Resolution set forth in full the provisions of a bill, § 2897, which had been introduced at the 73rd Congress, second Session, but which had failed of passage. It is significant that while § 2897 contained provisions requiring receivers, liquidators, and other officers of any court of the United States to pay all taxes, etc., of a state the same as persons, corporations, etc. (without the limitation regarding conducting any business, as found in section 124a of Title 28 U.S.C.A. passed during the 73rd Congress) the California Legislature saw fit to refer only to the interstate commerce features of the bill, and did not request that any action be taken by Congress toward state taxation of officers of the United States courts.[10]

A study of the language used in a number of the California cases wherein the sales tax provisions of the said Law have been construed lends no encouragement to the contention of the Board that Section 6005 by its express terms includes, or was in-

---

10. We deem it also significant that at the same Session of Congress, and in March, 1934, said bill, containing phraseology not limiting taxing court officers to those conducting a business" failed to pass, while Section 124a of Title 28 U.S.C.A., limiting such taxation to those "conducting any business" was passed by the same Congress in June, 1934.

tended to include a trustee in bankruptcy such as the one involved herein.

In People v. Herbert's of Los Angeles, 1935, 3 Cal.App.2d 482, 39 P.2d 829, 830, the court described the California taxing statute as a tax upon the "retail dealer and upon him only"; "that in ultimate effect the fund out of which payment is made may be or in fact has been obtained by the dealer from his customers does not make the tax a levy upon the consumer."

Roth Drugs, Inc., v. Johnson, 1936, 13 Cal.App.2d 720, 57 P.2d 1022, 1030, characterized the sales tax as "an excise tax on the privilege of operating retail mercantile enterprises"; as a tax levied upon "occupations or on the marketing of goods by merchants;" as a tax upon "the privilege of maintaining occupations or business enterprises".

Western Lithograph Co. v. State Board of Equalization, 1938, 11 Cal.2d 156, 78 P. 2d 731, 117 A.L.R. 838, is perhaps the case most widely cited on the subject of the California sales tax statute; the citation of this case has appeared in nearly every opinion rendered by the Federal courts as well as the California courts, where the said statute is construed. On page 735 of 78 P.2d the word "merchandise" is used, page 736 of 78 P.2d, "an excise tax for the privilege of conducting a retail business", "open market"; on page 737 of 78 P.2d we find language such as the tax is a necessary expense of "conducting the business", "computed upon the gross receipts from the conduct of the business of the retail merchant", "privilege tax on retailer of commodities".

In National Ice and Cold Storage Co. of California v. Pacific Fruit Express Co., 11 Cal.2d 283, 79 P.2d 380, 383, we find: "tax is a direct obligation upon the retailer for his privilege to conduct a retail business."

People v. Monterey County Ice, etc., 1939, 29 Cal.App.2d 421, 84 P.2d 1069, uses "merchants" and "merchandise" in referring to taxpayers and goods sold.

Cases not dealing with mercantile establishments have been cited by counsel for the Board as follows: Union League Club v. Johnson, 1941, 18 Cal.2d 275, 115 P.2d 425, is offered to the effect that the taxpayer need not be engaged in selling for profit so long as he sells for gain, benefit or advantage. While this case may provide an instance where the liability of the tax was not imposed upon what might be termed a mercantile enterprise, the tax was imposed upon a taxpayer specifically included under Section 6005 as amended in 1939, "social club, [and] fraternal organization."

Los Angeles City High School District v. State Board, 1945, 71 Cal.App.2d 486, 163 P.2d 45, is cited by said counsel as indicating that sales made pursuant to statutory law are subject to the sales tax. The School District was held liable for the sales tax based upon sales, continuously and over a period of years, of worn-out desks, etc. The Court pointed out at page 47 of its opinion in 163 P.2d that public corporations and political subdivisions had been made subject to the act with the apparent intention of making the "public business" of such bodies subject to the provisions thereof.

It is also of interest that in the case just referred to, the appellants had cited the case of State Board of Equalization of State of California v. Boteler, 9 Cir., 131 F.2d 386, which we have heretofore mentioned as one of the Federal decisions holding the sales tax provisions of the Law did not apply to a trustee in bankruptcy after adjudication, selling in liquidation under order of court. The California Court of Appeal, 163 P.2d page 47, while refraining from expressing any opinion as to the correctness of the decision, stated that the Ninth Circuit case differed materially from Bigsby v. Johnson, supra, as well as the case before it, because "in the federal case the sale was not made in the course of conducting a business but in the process of putting an end to a business."

People v. Imperial County, 1946, 76 Cal. App.2d 572, 173 P.2d 352, 353, is also cited by the Board on the same principle as the School District case discussed in the two preceding paragraphs. The sales involved had been made over a period of years by the County, and were of crushed rock and gravel, wood, and materials and equipment

no longer needed for use in constructing and maintaining roads and highways. The Court stated the case at bar involved exactly the same principles as Los Angeles High School District v. State Board, supra, and approved the reasoning in said case. The Court held that if the sales had been made by any person or organization other than a governmental organization, sales tax liability would have arisen, and since the statute had been expressly made applicable to a county, the same result must follow.

At this point we shall note another ruling in the Imperial County case and to which we wish to refer hereinafter in another connection. The County demurred to the complaint for collection of the tax on the ground that a claim against the County had not been filed prior to suit; that the time given by the taxing statute for bringing suit was inconsistent with the time given the county supervisors to act on claims, all contrary to the provisions of the Political Code of the State of California governing counties in such matters. The District Court of Appeal stated the "special taxing statutes control and take priority over the general statutes * * *".

Counsel for the Board also cite the case of In re Estate of Schneider, 1944, 62 Cal.App. 2d 463, 145 P.2d 90, as authority for their statement that the sales tax has been applied to an executor; in the Schneider case the court did not decide whether the tax was applicable, holding it lacked jurisdiction in view of the remedy provided by the taxing statute of payment and suit for a refund.

We have found only one decision in the California reports where an executor was held liable to pay the sales tax, and in that case, tax accrued by reason of sales made in the conduct of the business of the decedent. A California Court of Appeal, in an opinion reported in Re Morris' Estate, 1940, 37 Cal.App.2d 155, 99 P.2d 294, 295, stated the tax was imposed upon every person or estate for the privilege of engaging in the business of selling tangible personal property at retail. It is to be noted the Court also ruled that the tax was not to be classified merely as an expense of administration of the estate; calling attention to

the misdemeanor provisions of the statute for selling without a license, the Court stated that the sales tax is paramount to ordinary claims in the distribution of a decedent's estate, should be paid forthwith when due, and reversed the Superior Court which had held the tax to be an ordinary expense of administration to be paid in due course of administration.

Other cases appearing in the California reports have held that the furnishing of food, meals and drinks, the rendition of personal services along with the sale of personal property, the "conducting" of a race meeting where horses are claimed, a contractor furnishing personal services and materials, are subject to the law; but in all such cases it is observed that the taxpayer was "maintaining" a commercial enterprise, or was engaged in an occupation of habitually and continuously furnishing goods or services to the public, or was specifically made subject to the Law by express mention of the class within which the taxpayer fell, or the class of sales to be included in gross receipts.

Counsel for the Board have said little about the trustee's contention that the State has no power to levy a tax upon the trustee herein for the privilege of performing the functions made mandatory by Congress under the Bankruptcy Act. Rather, counsel have intimated that the practical effect of the said statute is to impose the tax upon the consumer; this position is made evident by their statement that no substantial difference exists between the New York Municipal Sales Tax Law which was considered in the case presently cited, and the California Sales and Use Tax Law, and their assertion that the situation before this court is almost identical to that which was before the Court of Appeals of the Second Circuit in such case, City of New York v. Jersawit (In re Leavy et al.), 1936, 85 F.2d 25.

Contrary to the Board's assertion, we feel that according to the construction placed upon the New York City sales tax by the Court in the case cited, a substantial difference exists between the tax discussed in the Jersawit case and the Cali-

fornia sales tax as construed by the California courts.

The New York City tax was held by the Court of Appeals to be a tax imposed upon the *consumer* with the vendor the collector; the reasoning of the said Court appears to be based upon such premise.[11] It found occasion in the Jersawit decision to refer to a previous opinion rendered by it in Re Flatbush Gum Co., 2 Cir., 1934,[12] 73 F.2d 283, certiorari denied, People of State of New York v. Arnold, 294 U.S. 713, 55 S.Ct. 509, 79 L.Ed. 1247, and stated the latter case dealt with a tax levied by the State of New York upon the privilege of selling tangible personal property at retail. The seller in the Flatbush case was a "receiver" in bankruptcy, who after adjudication and pursuant to court order sold the bankrupt's assets in liquidation. Mentioning the State statute did not include the words "receiver or trustee", the Court in the Flatbush case observed that for this reason it was not called upon to decide "the rather baffling question of what is, or what is not, the imposition of a state tax upon an instrumentality of the United States. * * *". [73 F.2d 284]

After quoting its remarks in the Flatbush case, the said Court in the Jersawit case stated, 85 F.2d page 27: "A tax on a sale made by a trustee under an order of court for purposes of liquidation if payable directly and primarily by him would doubtless be a burden on a governmental instrumentality,[13] for a judicial sale in liquidation of a bankrupt estate would in a peculiar sense involve the exercise of a federal function. Indeed, without the exercise of such a function and the power thus to dispose of assets, administration in bankruptcy would hardly be practicable. A tax on the vendee in connection with a sale in liquidation of a bankrupt's estate is, at least in a formal sense, quite different from a tax for which the vendor is made primarily liable."

Counsel for the Board also have cited the case of Bird & Jex Co. v. Anderson Motor Co., 92 Utah 493, 69 P.2d 510, decided by the Supreme Court of Utah in 1937; there a liquidating receiver who did not operate the business sought immunity from the sales tax of that State on the ground that he was an officer of the court appointed to liquidate the business, that his sales were subject to the confirmation of the court, that he was not a "person" within the meaning of the State taxing statute. The Utah court held him liable, stating it appeared the receiver was not intended to be immune from the tax, and emphasized the importance of the fact that the tax was imposed upon the sale; that the receiver's status was that of a "collector" for the State. Further, we note that the receiver was acting under authority of a state law, and not under the Bankruptcy Act.

The cases construing the New York State tax, the New York City tax and the Utah tax illustrate the difficulty of applying judicial rulings with reference to other taxing statutes to the problem before us.

Reading some of the cases decided in State courts other than California, it has appeared to us, at first blush that we found an analogy to the situation here presented, but an examination of the taxing statute involved disclosed differences which could

11. We have noted City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333, decided in 1941, holding said tax is a tax imposed upon the seller as well as the buyer, holding it a pecuniary burden laid upon the seller. We have not been able to ascertain whether the New York City Law was amended since decision of the Jersawit case, but feel that since we are here discussing the construction of the Second Circuit based upon the premise that the tax discussed is a tax upon the consumer, our view of such *construction* and the effect thereof is not altered by the decision in the Feiring case.

12. The Flatbush case was decided in November after Section 124a of Title 28 U. S.C.A. had been passed the preceding June of 1934, and the Jersawit case about two years after said section was passed; the opinion in neither case refers to said section.

13. We do not find it necessary to decide, nor deem the question of any importance in the case before us, whether the trustee herein may be classified as an "instrumentality" of the government.

not be reconciled with the California Sales and Use Tax Law.

Cases such as City of New York v. Jersawit, supra, and Bird & Jex Co. v. Anderson Motor Co., supra, might be of aid in resolving our problem, if we could bring ourselves to agree with counsel for the Board that the California taxing statute is of the same general effect as those where the purchaser is the taxpayer and the vendor is the collector; but the California courts have been most explicit in pointing out the differences between such statutes. Judicial emphasis has been especially noticeable in those cases wherein exemption from the sales tax provisions was claimed because the *purchaser* was engaged in interstate commerce, or was alleged to be a government instrumentality.

For instance, in the case of Western Lithograph Co. v. State Board of Equalization, 11 Cal.2d 156, 78 P.2d 731, 117 A.L.R. 838, to which we have referred earlier, a national bank was the purchaser; the California Supreme Court at page 733 of 78 P.2d discussing Metcalf & Eddy v. Mitchell, 1926, 269 U.S. 514, 523, 46 S.Ct. 172, 70 L.Ed. 384, on the subject of immunity of State and federal governments from taxation, quoted from said case as follows: " 'But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax. * * * or the appropriate exercise of the functions of the government affected by it.' "

The California Supreme Court then referred to the section of the taxing statute wherein the retailer might calculate the method of reimbursement to himself by listing separately the amount of the tax from the sales price, but held that this provision did not afford a basis for considering the tax to be laid on the consumer. Citing California cases, it was said at page 735, of 78 P.2d: "* * * the act creates the relationship of sovereign power and taxpayer between the state and the retailer, and not between the state and the consumer."

The Court emphasized that the purchaser does not pay the tax. "He pays or may pay the seller more for the goods because of the seller's obligation, but that is all." At pages 735, 736 of 78 P.2d the nature of the taxing statute was thus succinctly phrased: "* * * the tax being a direct obligation of the retailer and, so far as the consumer is concerned, a part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer. It does not become a tax on the sale nor because of the sale, but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales."

At page 737, of 78 P.2d, the Court observed that although the tax might result in an increase in the price paid by the bank for the goods, the imposition of a privilege tax on the retailer did not interfere with the power of the government, or borrow money, and that it did not affect in any substantial manner the efficiency of its agency in the performance of its duties, and did not interfere with the exercise of the governmental functions delegated to its instrumentality.[14]

Since the decision in the Western LithographCo., supra, case, there has been general uniformity in the construction given to the sales tax provisions of said Law by the California courts. We have found only a few phrases in the language of the reported opinions of such courts to indicate that the said tax might be construed as other than a tax upon the privilege of selling, or as being imposed upon anyone other than the seller.

14. See Colorado National Bank of Denver v. Bedford, 310 U.S. 41, 60 S.Ct. 800, 84 L.Ed. 1067, where Court held national bank liable as collector of use tax imposed upon users of safety deposit boxes; held no burden on bank to collect, especially in view of 3% of tax paid to bank as fee for collection.

In the case of Kamp v. Johnson, 1940, 15 Cal.2d 187, 99 P.2d 274, an optometrist was held to be a retailer in his sales of completed glasses to his customers; the Supreme Court of California stated at page 276 of 99 P.2d that the broad definition of the statute with reference to "retail sale" compelled the conclusion that the legislature did not intend to leave *any* sale of tangible personal property untaxed unless specific exemption were made, and that once a retail sale is established the only question for construction remaining is *who* is the retailer.

We took the holding in this case as leaning toward a construction that the sales tax is imposed upon the "sale" rather than the privilege of selling; we note, however, that in 1947 the Legislature of the State of California added a special section to the Law, section 6018, making an optometrist or physician or surgeon a retailer of the materials furnished by him to his patients.

Turning to more recent decisions of the said Supreme Court, we found what at first appeared to be evidence of a construction of the sales tax provisions of said Law similar to Kamp v. Johnson, supra, as opposed to that of Western Lithograph Co., supra, in the majority opinion in Richfield Oil Corporation v. State Board of Equalization reported at 155 P.2d 1, 1944, and in the dissenting opinion on rehearing reported at 27 Cal.2d 150, 163 P.2d 1, 1945.

On the first hearing before the said Supreme Court the majority opinion was written by its learned Chief Justice, and there seemed to be some indication in the language at page 5 of 155 P.2d that the Court was willing to construe the California sales tax provisions of the Law as a tax, if not on the goods sought to be exported by the Richfield Oil Company, at least as a levy upon the sale of the goods. The opinion held the California sales tax unconstitutional as contravening the prohibition of the United States Constitution against an impost on an export. A dissent was recorded by another justice, who felt that the California tax was upon a "privileges which the state was authorized to grant or deny" [155 P.2d 8] and distin-guishable from a personal property tax or a tax on the sale or because of the sale.

The case was reheard by the California Supreme Court during the following year. This time the opinion of the Court was written by the dissenting justice of the previous hearing, and the tax was held valid. Therein it was insisted that the California sales tax was levied upon retailers for the privilege of selling tangible personal property at retail, citing Western Lithograph Co. v. State Board of Equalization, supra, and other California cases. The opinion also took notice of what was therein termed "the new approach" to the problem of "collision between state taxation and interstate commerce" as developed in the United States Supreme Court decisions cited therein, and stated at page 4 of 163 P.2d: "Under the foregoing authorities it is perfectly clear that had this been an interstate transaction it would have been subject to tax."

This decision was accompanied by a dissent of the Chief Justice of the Court, who, in his dissenting opinion, refused to apply the reasoning of the cases cited in the majority opinion to cases dealing with exports, asserting that the prohibition of the federal Constitution with reference to imposts on exports was a different clause than the provision relating to interstate commerce, and again held the tax invalid as an impost upon an export. He stated, at page 7 of 163 P.2d: "It is apparent, however, that a new approach has been taken with respect to the problem of state taxation in the field of interstate commerce * * * Thus if the present case involved the commerce clause * * * of the federal Constitution, it may be that the tax could properly be imposed, since it falls equally without discrimination, on all sales in the state * * *."

Also on page 7 of the dissenting opinion in 163 P.2d we find: "Although the *formal* subject of the tax is the 'privilege of selling' * * * (citing Western Lithograph Co. v. State Board of Equalization, supra) *it is clear that the actual taxable event is the sale * * ** The United States Supreme Court has stated that in

constitutional law cases the formal subject of a tax as declared by a state statute may be disregarded if the tax is in reality on something else * * *". (Emphasis supplied.)

The Supreme Court of the United States, in its opinion reported in Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80, held that whatever the validity of the California tax under the Commerce Clause, it was unconstitutional under the Import-Export Clause; that the two provisions were not co-terminous; that the Commerce Clause is cast, not in terms of a prohibition against taxes, but in terms of a power on the part of Congress to regulate commerce, and saying, 329 U.S. page 75, 76, 67 S.Ct. page 160: "* * * The scope of the limitation [upon the power of the states] has been determined by the Court in an effort to maintain an area of trade free from state interference and at the same time to make interstate commerce pay its way * * * 'that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed.' That accommodation has been made by upholding taxes designed to make interstate commerce bear a fair share of the cost of the local government from which it receives benefits * * * and by invalidating those which discriminate against interstate commerce, which impose a levy for the privilege of doing it, which place an undue burden on it * * *."

The United States Supreme Court also noted the construction of the majority opinion at the second hearing of the Supreme Court of California, stating, 329 U.S. pages 83, 84, 67 S.Ct. page 164: "The California Supreme Court held that the tax is an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales; that it is not laid upon the consumer and does not become a tax on the sale or because of the sale * * *".

Any doubt as to uniformity of construction by the California courts on the subject of the nature of the sales tax here under consideration which we might have thought to discern from some of the language of the wording of the Richfield opinions, or in the Kamp v. Johnson opinion, supra, would be speedily dissipated by the incisive tone of the unanimous opinion of the California Supreme Court in the case of Ainsworth v. Bryant, 34 Cal.2d 465, 211 P.2d 564.

In that decision, written in November of 1949,[15] we find a careful analysis of the California sales tax provisions, and a detailed comparison between such taxing statute and a San Francisco ordinance imposing the sales tax upon the consumer. A wealth of California cases construing the sales tax sections of said law is found in said opinion; 211 P.2d at page 569, the Court observed that the nature of a tax must be ascertained by its incidents and from the natural and legal effect of the language employed; that it thus appeared that the San Francisco tax was exacted from the consumer upon each sale, and that so classified it fell under the generic heading of a sales tax; "but", the Court stated, 211 P.2d at page 569, "it rests on a wholly different concept from that underlying an *occupation tax* imposed upon a *merchant* for the privilege of doing business and measured by the gross receipts from sales." (Emphasis supplied.) The Court continued: "Illustrative of this latter type is the California Retail Sales Tax Act, Stats.1933, p. 2599; as amended, which 'specifically declares that the tax is imposed on *retail merchants,* and not on the consumers.'" (Emphasis found.)

The Court then followed with further quotations from the Law here under consideration, emphasizing in each instance the

15. We note that this case was decided after the 1949 amendments were made to the said Law. It may be that the Court felt the need of a clarification in the construction of said Law, because we note the California Sales and Use Tax Law was in no way involved in this case, yet there is a complete review of the cases cited on the subject, and what seems to be a reaffirmance of the principles set forth in the Western Lithograph case.

language referring to "retailer"; stating with further emphasis that while the act authorizes the tax to be collected from the consumer in so far as the same can be done, such section merely makes it optional with the *retail merchant* as to whether he will reimburse himself from his customers for the tax he is compelled to pay; (citing Roth Drug, Inc., v. Johnson, supra, 13 Cal. App.2d 720, 57 P.2d 1022) "as his direct obligation to the state *in order 'to be allowed* to sell tangible personal property at retail.' " (Emphasis supplied.)

Also at page 569 of 211 P.2d the Court quoted from Western Lithograph Co. v. State Board of Equalization, supra, 11 Cal. 2d 156, 78 P.2d 731, at page 735, 117 A.L.R. 838, declaring, " 'The law contemplates the imposing of the fixed rate of the tax on the gross receipts, * * * and *not on the individual sale of merchandise'.*" This language was also emphasized: "*It does not become a tax on the sale nor because of the sale,* but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales.' "

In Martin Ship Service Co. v. City of Los Angeles, decided by the Supreme Court of California in February of this year, 34 Cal. 2d 793, 215 P.2d 24, 25, said Court construed a Los Angeles City tax levied upon the privilege of carrying on certain occupations and measured by the gross receipts therefrom as it applied to the plaintiff who was "engaged in local activities essential to interstate commerce." The Court quoted from Interstate Oil Pipe Line Co. v. Stone, 1949, 337 U.S. 662, 69 S.Ct. 1264, 93 L. Ed. 1613, mentioning that the Supreme Court of the United States is concerned with "the practical operation of challenged state tax statutes, not with their descriptive labels", but did not voice a construction of the Los Angeles City tax different than that it was a privilege tax upon plaintiff's occupation. Citing most of the recent United States Supreme Court cases having to do with state taxes and interstate commerce, the California court discussed Interstate Oil Pipe Line v. Stone, supra, and stated that in such opinion four justices were willing to uphold the tax, though assuming it was upon the privilege of carrying on an inter-

state business; that one justice concurred on the ground that the business was intrastate; that four dissenting justices were of the opinion that the tax was on the privilege of engaging in interstate transportation and was invalid solely for that reason.

The California Supreme Court, 215 P.2d at page 31 indicated doubt that the position of the dissenting justices "still had any vitality", but felt it was not obliged to resolve the conflicting views; it characterized the Los Angeles City tax as imposed upon local incidents of the commerce, rather than on " 'the very process of interstate commerce.' "

It is familiar language in United States Supreme Court cases construing state taxing statutes that the courts are bound by the construction placed upon a state statute by the highest court of the state; (see Aero Mayflower Transit Co. v. Board of R. Com'rs, 1947, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 and cases cited) such language is usually followed by a statement that the United States Supreme Court will look to the incidence of the tax and its practical operation and not its characterization by state courts, in determining whether the taxpayer is deprived of a federal right, or whether the tax is within the state's constitutional power. State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 443, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229; International Harvester Co. v. Wisconsin Dept. of Taxation, 322 U.S. 435, 441, 64 S.Ct. 1060, 88 L.Ed. 1373; Richfield Oil Co. v. State Board of Equalization, supra, 329 U.S. page 84, 67 S.Ct. page 164, 91 L.Ed. 80.

It is not our thought that for the purpose of a decision on the matter before us we are required to pass upon the constitutionality of the California Law under consideration as applied to the trustee here before us; in fact we are expressly enjoined from so doing unless such adjudication is unavoidable. Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101. But we have given study to the construction California courts have placed upon the said Law in an effort to ascertain whether we would be permitted to construe the tax as one, in prac-

tical operation and effect, laid upon the consumer, and thus call to our aid the cases cited with reference to taxes of that type.[16]

Such study has been, we feel, justified by the warning expressed in Spector Motor Service v. O'Connor, 2 Cir., decided March, 1950, 181 F.2d 150, certiorari granted Oct. 9, 1950, 71 S.Ct. 49, where an opinion rendered by the distinguished bench of the Second Circuit stated, 181 F.2d page 156: "Emphasis upon substance and a wariness as to labels is especially necessary as to a state tax termed an excise upon the privilege of doing business within the state. It is an easy slide from this to the thought that what is taxed is 'the franchise to operate in interstate commerce,' an 'exaction for a privilege no state has power to grant.'"

It is obvious, however, that the California courts are firm in their interpretation of the sales tax provisions of said Law; in view of the repeated explanations of the reasons for such interpretation, we could not "look behind the label" and find anything different. It is also obvious that the repeated and recent emphasis by such courts on that interpretation indicates that the tax, whether with reference to interstate commerce or exports, is to stand, or fall if necessary, on such premise.

We are therefore concluded by the definite and final characterization of the courts of California as to the nature and incidence of said tax.[17]

■ We must now give attention to other sections of the Law here involved for "every part of a statute must be construed with the whole, so as to make all the parts harmonize, if possible and give meaning to each." Washington Market Co. v. Hoffman, 1879, 101 U.S. 112, 115, 25 L.Ed. 782; Petition of Public Nat. Bank, 1928, 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202. We are not permitted, in construing the statute, to remove a word from the context, but must construe the details of the act in conformity with its dominating general purpose so as to carry out legislative policy. Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 350, 64 S.Ct. 120, 88 L.Ed. 88. Also, we may not adopt a construction of a word which will create an inconsistency with the remainder of the statute, if a reasonable interpretation can be adopted which will not do violence to the plain words of the act and will carry out the intention of the legislative body. U. S. v. Raynor, 1938, 302 U.S. 540, 547, 58 S.Ct. 353, 82 L.Ed. 413; New Lamp Chimney Co. v. Ansonia Brass & Copper Co., 1876, 91 U.S. 656, 23 L.Ed. 336.

■ There is also a presumption against a construction which would render a statute ineffective or inefficient or which would cause grave public injury or even inconvenience. National Homeopathic Hospital Ass'n of Dist. of Col. v. Britton, 79 U.S. App.D.C. 309, 1945, 147 F.2d 561, 564; U.S. v. Powers, 1939, 307 U.S. 214, 217, 59 S.Ct. 805, 83 L.Ed. 1245.

In Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed.

16. See Federal Land Bank of St. Paul v. Bismarck Lumber Co., 1941, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65, where retailer required to add tax to sales price, and it was unlawful for retailer to advertise he would absorb, yet the North Dakota Act *declared* the tax to be a debt from the consumer to the retailer, and the United States Supreme Court followed the ruling of the North Dakota Supreme Court, 70 N.D. 607, 297 N.W. 42, in holding the sales tax laid upon the purchaser, saying at page 99 of 314 U.S. at page 3 of 62 S.Ct. just above cited: "These determinations of the incidence of the tax by the state court are controlling." and held sales to federal land bank not subject to tax.

17. See also Colorado National Bank of Denver v. Bedford, 310 U.S. 41, page 52, 60 S.C. 800, at page 805, 84 L.Ed. 1067, where the bank was "liable" for the tax, but the state court had ruled the incidence of the tax was upon the user; the Supreme Court stated the determination of the state court as to the incidence of the tax "has great weight with us and when it follows logically the language of the act, as here, is controlling. As the user directly furnishes the funds for the tax, not as an ultimate consumer with a transferred burden, but by Section 12 of the act as a responsible obligor, we conclude the tax is upon him, not upon the bank. * * *"

635, we find stated some general principles of statutory construction with reference to the intent of Congress in passing a section of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., relating to exemption of a "public utility". The business claiming exemption was that of a Los Angeles public warehouse company. In its opinion holding said business exempt, the Supreme Court observed at pages 144 and 145 of 321 U.S., at page 475 of 64 S.Ct. that under the laws of the State of California the business of complainant was regulated by the Railroad Commission of that State under powers vested in it by the California constitution, and that rates of complainant were fixed by said Commission, the company was required to make periodic reports and was subject to numerous restrictions and disabilities. At page 146 of 321 U.S., at page 476 of 64 S.Ct. the Supreme Court noted that the effect of the federal regulation would have prohibited the complainant from charging the rates authorized by the California Railroad Commission. At page 147 of 321 U.S., at page 477 of 64 S.Ct. the Court noted that Congress had omitted to define "public utility", stating that "relevant authorities and considerations are numerous and equivocal, and different plausible definitions result from a mere shift of emphasis."

Quoting the language of the Supreme Court found at page 152 of the opinion in 321 U.S., at page 479 of 64 S.Ct.: " * * * But as matter of policy Congress may well have desired to avoid conflict or occasions for conflict between federal agencies and state authority which are detrimental to good administration * * * Where *Congress has not clearly indicated a purpose to precipitate conflict, we should be reluctant to do so by decision. * * *"* (Emphasis supplied.)

The Supreme Court further observed at page 154 of 321 U.S., at page 480 of 64 S. Ct.: " * * * The existence and force and function of established institution of local government are always in the consciousness of law makers and, while their weight may vary, they may never be completely overlooked in the task of interpretation.

The Court also noted at page 154 of 321 U.S., at page 480 of 64 S.Ct. that Congress may have thought it important to avoid paralyzing or extinguishing local institutions not seriously conflicting with the central government's place.

At page 155 of 321 U.S., at page 480 of 64 S.Ct. the Court continued: "It also is contended that an interpretation must prevail as a matter of principle which will give the exemption a general and uniform operation in all states irrespective of local law. It is, of course, true that uniform operation of a federal law is a desirable end, and other things being equal we often have interpreted statutes to achieve it. But in no case relied upon did we achieve uniformity at the cost of establishing overlapping authority over the same subject matter in the state and in the Federal Government. When we do at times adopt for application of federal laws within a state a rule different from that used by a state in administering its laws, the two rules may subsist without conflict, each reigning in its own realm. It is a much more serious thing to adopt a rule of construction, which we are asked to do here, which precludes the execution of state laws by state authority in a matter normally within state power * * *"[18]

The principles enunciated in the case just cited may be applied with equal force to the construction of the State taxing statute involved in this case. What was said by the court with reference to whether Congress, in passing the Act therein discussed, intended to include a public warehouse existing under and by virtue of and regulated by the laws of the State of California as a public utility, may be considered with reference to whether the Legislature of that State, in passing the Law here before us, intended to include a trustee in bankruptcy (selling after adjudication, etc.) whose office exists under and by virtue of, and whose conduct is regulated by, the laws of the United States, or the orders of the

---

18. See also St. Louis Southwestern Ry. Co. v. State of Arkansas, 235 U.S. 350, page 369, 35 S.Ct. 99, 59 L.Ed. 265.

bankruptcy court made pursuant to such laws.

Turning to the sales tax sections of the California Sales and Use Tax Law, we observe that most of the provisions for imposition and enforcement were found in the Retail Sales Tax Act of 1933; there has been little change in the "machinery" for collection of the tax since 1933.

▮ Referring to Pacific Co. v. Johnson, 285 U.S. 480, 52 S.Ct. 424, 76 L.Ed. 893, supra, we note again the principle set forth therein, that the legislative purpose in enacting a statute must be taken, regardless of forms of words, to envisage the obvious consequences which flow from its operation.

What are the obvious consequences of a construction that sales tax provisions of the California Sales and Use Tax Law are applicable to a trustee in bankruptcy selling in liquidation, after adjudication, under order of court?

In order to gain an idea of the effect of the said Law upon the administration of the bankrupt estate, we must read each of the sections with the words trustee in bankruptcy substituted for retailer or seller, keeping in mind that we are not here dealing with a person mentioned in Sections 124, 124a or 125 [19] of Title 28 U.S.C.A. who is conducting a business, but are discussing a trustee such as the one before us, selling the assets of a bankrupt estate, not from choice, but because of the mandate of the Congress of the United States to collect and reduce to money the property of the estate, under the direction of the bankruptcy court, and close up the estate expeditiously.

Sections 6066, 6067, 6069, 6070 and 6701 have to do with the permit required by Section 6051 for the privilege of selling tangible personal property at retail. These provisions cannot be characterized as "mere registration provisions to enable the State to know who is in business" as was explained with reference to the Arizona Occupation Tax in O'Neil v. United Producers & Consumers Co-op., 1941, 57 Ariz. 295, 113 P.2d 645; these sections represent an integral part of the plan to secure collection of the taxes. There is a flat requirement for payment of a fee of $1.00 and the said sections place in the hands of the Board the power to require security up to the amount of $10,000 as a condition to the issuance of a permit. A criminal penalty is imposed for selling without such permit; after a hearing before it, the Board may revoke such permit for violation of any of the sales tax provisions of the law, or for a violation of any of the rules or regulations of the Board relating to the sales tax prescribed by the Board under the provisions of the Law; after such revocation,[20] the permit may not be reissued until the Board is "satisfied" that the taxpayer will comply with the Law and the regulations adopted by the Board.

In State of California v. Gillis, 1934, 9 Cir., 69 F.2d 746, 748, a federal receiver in equity operating an oil company was unable to obtain the bond required by the State Board of Equalization as a prerequisite to the issuance of a license to operate. The Circuit Court ruled that under former Section 124 of Title 28 U.S.C.A., the compliance with the state statute was a condition precedent to the right of the receiver to engage in the business referred to; that if the receiver could not comply therewith, "we think the estate should be liquidated and the receivership closed."

---

19. These citations refer to Title 28 U.S.C.A. before revision. Section 124, now found in 28 U.S.C.A. § 959(b), reads as follows: "Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. * * *." The criminal provisions of said section are found in Section 1911 of Revised Title 18 U.S.C.A.

Section 125 provided that receivers, etc., might be sued without leave of court for any act transacted during the carrying on of the business. This section is now found in 28 U.S.C.A. § 959 (a). Section 124a is found at 28 U.S.C.A. § 960.

20. See Section 6070 of the Law.

In approving the decision of the Court of Appeals, the Supreme Court in Gillis v. State of California, 1934, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199, noted the inability of the receiver to comply with the statute requiring the posting of the bond; noted the contention of the receiver that the provisions of the California statute diminished the power of the United States District Court to direct its receiver to operate the business of the company; also his contention that by requiring bond to secure taxes the statute created a preference over the United States in respect of collections.

The Supreme Court, 293 U.S. at page 66, 55 S.Ct. at page 5 ruled that the diminution, if any, of the powers of the District Courts prior to its enactment resulted from the passage of Section 124 of Title 28 U.S. C.A.; that if any priority for the state resulted, that also would accompany permissive action by Congress; that Congress having given the United States power to direct the conduct of such a receiver, could withdraw the power; the Court further stated at page 66 of 293 U.S., at page 5 of 55 S.Ct.: "And, if the receiver cannot continue to carry on the Company's business according to the plain direction of Congress, he must pursue some other course permitted by law."

We must keep in mind the fact that each bankrupt estate is not necessarily that of a corporation or an individual who has been in business; the bankrupt may be a wage earner whose assets consist of a few pieces of non-exempt personal property; it is not logical to assume that after adjudication in every instance or in most instances there will be assets consisting of cash on hand; or that the assets will be in the form of real property, or tangible personal property only of the sort it is most advantageous to sell other than at retail; and it is not logical to assume that every trustee will be able to post the security which may be required by the Board; but it is logical to assume, in fact, it is an assumption almost inevitable that in many instances a frustration of the purposes of the Bankruptcy Act would thus result.

The conclusion is therefore thrust upon us that if we envision the Law here before us as including the trustee herein, we must also be prepared to offer him "some other course" if he is unable to comply with the mandate of the Bankruptcy Act to convert the assets to cash by reason of his inability to comply with the permit provisions of the Law. It is certain neither the Bankruptcy Act nor the California Sales and Use Tax Law provides him with an alternative.

Once a permit to sell is granted, the taxpayer must make returns of the gross amounts of his sales at retail quarterly; the amount shown due on the return must accompany the return; the Board may extend time of filing return not to exceed one month, or make the return due immediately upon sale,[21] or at other periods than quarterly; if not "satisfied" with the return, the Board may make a deficiency determination that an additional sum is due; notice of this determination may be given by mail at any time within three years; the deficiency determination is final unless a petition for redetermination is filed within 30 days, in which event, an oral hearing may be had before the Board on notice to the taxpayer; the order on such hearing becomes final thirty days after mailing of notice to the taxpayer. All determinations are due and payable at the time they become final, with penalties added for delinquency.

Should no notice of the decision after hearing be mailed to the taxpayer, he must wait six months from the date of filing the petition before bringing suit; payment of the amount alleged to be due and suit for a refund constitutes the sole manner in which judicial ascertainment of his liability can be had at the instance of the taxpayer; another section specifies suit must be brought in the County of Sacramento, California.

Provision is also made for a "jeopardy" assessment at any time the Board believes the collection of the tax will be jeopardized by delay; the amount thereby assessed becomes immediately due and payable; within ten days after mailing of notice to the taxpayer as to such last mentioned determina-

---

21. See Section 6455 "return periods"; also Section 6536 'jeopardy assessments."

tion the taxpayer must apply for a redetermination, and must file within such time such security as the Board may deem necessary to secure compliance, or the amount determined due becomes final.

The Board may require security or additional security at any time, and any security deposited by a taxpayer may be sold upon ten days notice if the sale is necessary for collecting the tax; all credits of the taxpayer in the hands of other persons may be ordered frozen by the Board for as long as 60 days in the event of a delinquency, or in the event a determination made remains unpaid.

In addition to sale of security and freezing of credits, the Board has other remedies, all of which are cumulative, including the filing of a lien upon the property of the taxpayer any time within three years after a determination becomes final, such lien having the finality and force and priority of a judgment.

Under Section 6776 it appears that at any time within three years after a person is delinquent (and where a return is filed it appears a taxpayer is delinquent if the remittance does not accompany the return) the Board may, in addition to freezing the credits of the taxpayer, issue a warrant, whereupon the property of the taxpayer shall be levied upon and sale made the same as if pursuant to a writ of execution.

Under Section 6796 it seems that the Board has authority, at any time within three years after any person is delinquent in the payment of any amount, *to seize, without notice any property of the taxpayer* and after notice to sell the same at public auction, and to hold the residue after the amount of the tax and penalties is satisfied for the claims of third parties.

Under sections 6811 and 6812 a purchaser, under certain conditions, must withhold sufficient of the purchase price for 60 days after the purchase, to satisfy any liability which the seller may owe the Board; failure to so withhold makes the purchaser liable to the tax.

In addition to making it a misdemeanor to engage in business as a seller without a permit, the Law provides penalties for various other violations of the Law such as filing a false return, or failing to furnish *any* data required by the Board; the maximum penalty prescribed being imprisonment for a year and a $5,000 fine.

Under Section 6931 no injunction or writ of mandate or other legal or equitable process shall issue in any suit in any court to enjoin the collection of the tax; another section provides that the decision in any case is res judicata only as to liability involved for the same quarterly period. Section 7051 gives the Board power to prescribe regulations relating to administration and enforcement of the Law, and Section 7052 provides that the Board may "designate representatives to conduct hearings, prescribe regulations, or perform any other duties" imposed by the Law or other laws of the State upon the Board.

A reading of the Bankruptcy Act makes it at once apparent that nearly every section of the sales tax provisions of the said Law pose problems which not even the most practical approach could solve. We must pass on to other phases of this case, for discussion of other questions which counsel have presented herein, and feel we should not enlarge this already lengthy opinion to detail the conflicts between each of the sections of said Law and the rules which Congress has made for the administration of the bankruptcy estate, beyond mentioning a few of the most important of such conflicts.

Assuming a trustee such as is here before us were able to obtain a permit and sold at retail, there would arise the question of the authority of the Referee over administrative expenses;[22] the question of

---

22. Section 62, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 102, sub. a.

In an article by Referee Reuben G. Hunt written while a member of the Los Angeles, California, bar published in the Journal of the National Association of Referees in Bankruptcy in October, 1939, we note that this question has been the subject of much concern to those engaged in bankruptcy practice. State of New Jersey v. Lovell, 3 Cir., 1910, 179 F. 321, 31 L.R.A., N.S., 988, cited therein though

whether immediate payment of the tax would involve a priority[23] for the State over other administrative expenses, such as compensation of counsel, etc; if the trustee were delinquent, questions of liens upon assets in custodia legis[24] would be present-

dealing with matters with which we are not here concerned, contains appropriate language: "The question is of grave import, for it is clear that, if the administration of the law is respected, a court, without power or means to pay for carrying out its orders, must refuse to make such orders."

Also note construction of California courts in People v. Imperial County, 76 Cal.App.2d 572, 173 P.2d 352, supra, and In re Estate of Schneider, 62 Cal. App.2d 463, 145 P.2d 90, supra, that Law supersedes provisions of other statutes regarding claims against county, and claims against estates of decedents, in California.

23. (Question of whether immediate payment of the tax would involve a priority for the State over other administrative expenses)

Section 64, sub. a, Bankruptcy Act, 11 U.S.C.A. § 104, sub. a.

Taxes accruing during the administration of an estate have been held to be administrative expenses:

Heyman v. U. S., 6 Cir., 1923, 285 F. 685, where floor tax levied on purchases held payable by trustee as administration expense because trustee collected fund to which government entitled.

In re California Pea Products, D.C. Cal.1941, 37 F.Supp. 658; McColgan v. Maier Brewing Co., 9 Cir., 1943, 134 F.2d 385, certiorari denied 320 U.S. 737, 64 S.Ct. 37, 88 L.Ed. 437; City of New York v. Rassner, 2 Cir., 1942, 127 F.2d 703, allowing priority to City over other administrative expenses because of theory trustee in bankruptcy collected taxes as a "trustee" for city. In re Lambertville Rubber Co., 3 Cir., 1940, 111 F.2d 45, holding taxes have no priority over other administrative expenses but must share pro-rata. U. S. v. Fogarty, 8 Cir., 1947, 164 F.2d 26, 174 A.L.R. 1284; U. S. v. Killoren, 8 Cir., 1941, 119 F.2d 364, certiorari denied 314 U.S. 640, 62 S.Ct. 78, 86 L.Ed. 513; Hennepin County, Minn. v. M. W. Savage Factories, 8 Cir., 1936, 83 F.2d 453, certiorari denied 299 U.S. 555, 57 S.Ct. 16, 81 L.Ed. 408; Security First National Bank of Los Angeles v. United States, 9 Cir., 1946, 153 F.2d 563, income taxes accruing during administration on income of trustee; Thompson v. State of Louisiana, 8 Cir., 1938, 98 F.2d 108, franchise taxes; In re Columbia Ribbon Co., 3 Cir., 1941, 117 F.2d 999, Court may fix no priority in classes specified by § 64, sub. a of Bankruptcy Act; Ingels v. Boteler, 9 Cir., 1938, 100 F.2d 915, affirmed 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78; State of Missouri v. Earhart, 8 Cir., 1940, 111 F.2d 992, certiorari denied 311 U.S. 676, 61 S.Ct. 43, 85 L.Ed. 435, and cases cited at page 995 of 111 F.2d.

24. Assets in custodia legis:

Cf. McColgan v. Maier Brewing Co., 9 Cir., 1943, 134 F.2d 385, 388, certiorari denied 320 U.S. 737, 64 S.Ct. 37, 88 L. Ed. 437, where it was stated: "The statute (28 U.S.C.A. § 124a) does not in terms or by implication impair the principle that property in the custody of the bankruptcy court may not be subjected to liens while so held," citing Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060.

Boteler v. Ingels, 9 Cir., 1938, 100 F.2d 915, 919, approved, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442: "By the Act of June 18, 1934, 48 Stat. 993, 28 U.S.C.A. § 124a, a trustee who is authorized by any United States Court to conduct any business, and does so, is subject to all State and local taxes 'applicable to such business the same as if such business were conducted by an individual or corporation.' This is sufficient basis for the attachment of the penalty and lien."

Lyford v. State of New York, 2 Cir., 1944, 140 F.2d 840, page 846, certiorari denied 323 U.S. 714, 65 S.Ct. 41, 89 L. Ed. 574. While citing 28 U.S.C.A. § 124a, and Boteler v. Ingels, supra, court indicated installments due after railroad reorganization trustee was in possession and operating, were payable as taxes and as expenses of administration, with status of lien, we note that grade crossing elimination giving rise to tax occurred prior to the proceedings.

City of New York v. Rassner, 2 Cir., 127 F.2d 703, where debtor in possession collected city sales tax under New York City law which made him a trustee; the sales taxes were paid ahead of other claims for administration expenses from an estate insufficient to pay all of such expenses in full; Court held that question of priorities a question of federal law except where Congress made state law controlling; that any state had the right to protect its taxes by making them a lien; that Congress, in passing Section 124a of Title 28 U.S.C.A. had given tax collectors "preferred positions."

ed; the trustee, if he paid the taxes quarter-ly, or immediately after sale as the Board has power to require him to do, would be faced with the possibility of a surcharge [25] in the event the assets were not sufficient to cover other expenses in the same class of priority; also, in some cases it would not be possible to confirm a judicial sale until 60 days after sale with the consent of the Board.

Finally, in any one of a number of instances which could, and very possibly would occur, the entire estate might be taken into the hands of the Board to be administered for the benefit of the State of California and "third parties" by "representatives" appointed by the Board, under the direction of other "representatives" instead of under the control of the bankruptcy court.[26]

It may be argued that reported cases reveal instances where judicial sanction has been given to inroads by the state under its taxing power into the authority of the bankruptcy court over the trustee and the administration of the bankruptcy estate. It is to be noted, however, that in those instances where the courts have sanctioned a departure from traditional principles of the supremacy of the Bankruptcy Act and the exclusive jurisdiction of the bankruptcy court over property in custodia legis, any such departure which involved an interference with the jurisdictional and administrative provisions of the Bankruptcy Act has been judicially justified by a mention of Congressional direction or consent.[27]

It has been argued on behalf of the trustee that Congress, in passing Section 124a of Title 28 U.S.C.A. "consented" to taxing a trustee in bankruptcy or other court officer appointed for the purpose of, or conducting any business, and thus that such consent accomplished an implied prohibition against the imposition of additional taxes, such as those upon a trustee selling in liquidation, after adjudication and under order of court. It is not necessary for us to rule upon that question in this case.

■ We do hold, however, that whatever consent Congress gave, by passing Sections 124 and 124a of Title 28 U.S.C.A., to an interference with the jurisdictional and administrative provisions of the Bankruptcy Act with reference to the enforcement by a state of a tax against an officer of the bankruptcy court by reason of his conduct of any business, consent has not been given to such interference where a trustee in bankruptcy is selling in liquidation, after adjudication, under order of court.

We believe no encouragement for the Board's position may be derived from any idea that the Legislature of the State of California, when it inserted the word "trustee" in said taxing statute in July of 1945, was motivated by the thought that the levy of such a tax upon a trustee for the privilege of performing the functions made mandatory upon him by an Act of Congress had received implied sanction through any language found in opinions of the Supreme Court of the United States or of California dealing with the "new approach" to state taxation and interstate commerce.

Firstly, the United States Supreme Court in Spector Motor Service v. Mc-Laughlin, 323 U.S. 101, 65 S.Ct. 152, 153, 89 L.Ed. 101, in its opinion rendered December 4, 1944, had stated that if the state there involved "in fact sought to tax the right to engage in interstate commerce, a long course of consitutional his-

---

25. See: In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45; In re Englander, D. C.Pa.1930, 39 F.2d 931.

26. Section 6799 of the Law.

27. See In re Spier Aircraft Corp., 3 Cir., 137 F.2d 736, 738, where it was held that jurisdiction of bankruptcy court over assets must yield to emergency power given by Congress for requisitioning proper-ty of bankrupt estate. Also, Cullen v. Bowles, 2 Cir., 148 F.2d 621, 622, 623, and cases cited therein, holding bankruptcy reorganization trustee subject to Emergency Price Control Act under terms of Act making it paramount to any law inconsistent therewith; court also mentioned trustee subject by reason of his conduct of the business.

-tory and an 'unbroken line of decisions' would indeed be brought into question."

Secondly, while the first hearing in the case of Richfield Oil Corporation v. State Board of Equalization, Cal.Sup., 155 P.2d 1, supra, had been had, and the opinions in said case rendered prior to July of 1945, neither the majority opinion in such case, nor the dissenting opinion which discussed the "new approach" showed an intention to depart from the pronouncement in Western Lithograph Co. v. State Board of Equalization, 11 Cal.2d 156, 78 P.2d 731, at page 733, 117 A.L.R. 838, supra, that a tax to be condemned or avoided is one which "either *frustrates the purpose of the national legislation* or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created" (Emphasis supplied), or, from the pronouncement in McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, at page 48, 60 S.Ct. 388, at page 393, 84 L.Ed. 565, 128 A.L.R. 876: "Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or *impose a levy for the privilege of doing it * * * *"*. (Emphasis supplied.) The latter case was cited as authority in both the majority and dissenting opinions rendered at the first hearing in the said Richfield case.

Notwithstanding any impression that may be gathered of the view of the Supreme Court of California on the subject of state taxation versus interstate commerce, we do not believe it could be as-

sumed that such court would consider the privilege of the trustee involved in the instant case as "coterminous" with the privilege of doing business in interstate commerce; Congress has acted in the bankruptcy field, and has regulated the administration of bankruptcy estates.[28]

To hold then, that the Legislature of California intended a trustee such as is here before us to be included within the definition of the word "person" as applied with reference to the sales tax provisions of said taxing statute, would be to imply that the Legislature intended the trustee here to be subject to none of the enforcement provisions which present a conflict with the Bankruptcy Act; this would result in an inconsistency between the section mentioning "trustee" and the enforcement provisions of said statute, or an emasculation of the Law which would "deny the State the traditional and almost universal method of enforcing prompt payment" of the tax; or, we would be called upon to imply that the State intended to precipitate conflict or occasions for conflict between federal administration of the Bankruptcy Act and state administration of the Sales and Use Tax Law; or, that the State intended, in the absence of Congressional consent, to interfere with or to frustrate the execution of the powers conferred upon Congress by the Bankruptcy Clause of the Constitution.

We do not believe that the Legislature of California intended any of these obvious consequences as above mentioned. There are many persons, corporations or organizations to whom the word "trustee" can apply consistent with all the provisions of the Law, with the general purpose thereof, and without doing violence to the principles

---

28. In other words, cases decided with reference to interstate commerce and state taxation are not necessarily to be applied in construing bankruptcy and state taxation, for, as stated in Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 155, 156, 786, 62 S.Ct. 491, 86 L.Ed. 754, there are some fields of interstate commerce which Congress has not occupied with legislation and in those fields the states may act.

See also language of District Court in In re New York, N. H. & H. R. Co., D.C. Conn.1943, 54 F.Supp. 595 (reversed in part and affirmed in part, 2 Cir., 147 F.2d 40, certiorari denied Com. of Massachusetts v. New York, N. H. & H. R. Co., 325 U.S. 884, 65 S.Ct. 1577, 89 L.Ed. 1999) at page 623.

of statutory construction; a trustee in bankruptcy, selling in liquidation, after adjudication and under order of court is not one of them.

There remain still other sections of the Law which we should consider in the instant case, and we refer to those defining "retailer" and "business", which sections, along with that defining "person" are urged by counsel to bring the trustee herein within the application of the said Law. We must remember that Section 6051 does not impose a tax upon those mentioned in Section 6005 unless they are within the definition of "retailer", and unless the sales of such retailers are made at retail in California. Counsel urge that the trustee's sales in California, at retail, in liquidation, after adjudication and under order of the Bankruptcy Court constitute engaging in the business of making sales at retail.

In United States v. Pyne, 1941, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231, the Supreme Court discussed a set of facts where the executor of an estate engaged in the same activities which occupied the deceased, yet was not entitled to a deduction for "carrying on business" as had been the deceased. The Court stated at page 131 of 313 U.S., at page 895 of 61 S.Ct.: "Nor can the judgment of the Court of Claims be supported by that court's statements that the executors were engaged 'in the business of conserying the estate and protecting its income.' Such activities are the traditional duty of executors. Executors who engage actively in trade or business are the exception and not the rule. Rather obviously there could be clear cases where executors 'carry on * * * business' by continuing to operate a store, a factory or some other well known, well marked type of business activity. But in the absence of evidence showing activities coming within the general acceptation of the concept of carrying on a trade or business, it cannot be said

as a matter of law that an executor comes into this category merely because he conserves the estate by marshalling and gathering the assets as a mere conduit for ultimate distribution."

What was said in the case last cited as to the "traditional duties" of an executor applies to the mandatory duties of the trustee in bankruptcy in selling in liquidation, after adjudication, under order of court.[29] As was recognized by the Supreme Court of California in Fifth Street Building v. McColgan, 19 Cal.2d 143, 119 P.2d 729, supra, page 730, "Congress creates the trusteeship, fixes the conditions of its existence and may provide, as in the act of 1934, that a trustee be regarded as of such a nature as to come within the range of the state tax laws."

Congress has not seen proper to fix upon a trustee such as is before us the "nature" of a seller or retailer, or to state that his duties under the Act in regard to selling in liquidation, after adjudication and under order of court shall be regarded the same as if a private person or corporation was in the process of performing such acts.

For convenience, we repeat the definition given in the Law, Section 6013, that " 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage."

In Re California Pea Products, D.C., 37 F.Supp. 658, at page 661, supra, it was stated: "The adjudication was ordered under Section 236 of the Bankruptcy Act, 11 U.S.C.A. § 636, and the functions of the trustee in relation to the questioned sales were those, and only those, prescribed in Section 238 of the Bankruptcy Act, 11 U.S.C.A. § 638. In exercising such functions the trustee does not in the ordinary meaning of the term 'conduct any business.' "

29. Imperial Assurance Co. v. Livingston, 8 Cir., 49 F.2d 745, 749, 74 A.L.R. 1336: "All of his acts relate to administering property in the custody of the court or to bringing property into such custody so that it may be there administered. This situation, as an officer of the court administering property in the custody of the court is the woof into which all of his status, duties and powers are woven."

The Court also ruled that the Law did not specify a "trustee in bankruptcy" within the definition of person, and held that the referee in bankruptcy was correct in holding that the trustee there involved was not "one of the persons mentioned in the Act as being engaged in the business of selling tangible personal property [at retail]."

In re Davis Standard Bread Co., D.C., 46 F.Supp. 841, at page 842, supra, the Court stated that the trustee selling in liquidation, after adjudication and under order of court was not engaged in the business of selling tangible personal property at retail within the meaning of the said Law.

State Board of Equalization of State of California v. Boteler, 9 Cir., 131 F.2d 386, at page 388, supra, in affirming the decision in the Davis Standard Bread Co. case, held that the trustee was not engaged in the business of making sales at retail of tangible personal property.

The holdings of the three cases in our Ninth Circuit to the effect that the trustee was not engaged in business under the sales tax provisions of the Law were made separate and apart from any consideration of the fact that the Law at that time did not include "trustee" within the definition of person, and we are not persuaded that such rulings lose any weight by reason of the amendment. It is to be observed that the definition of "business" was the same then as it was when the trustee here is claimed to have been liable under the law.

It is also to be noted that in each of the three decisions, the Court ruled that the trustee was not "conducting" any business within the meaning of section 124a. We refer to this feature of those opinions for the second time in this discussion for the reason that (as will be noted from the quotations we have made earlier herein) the California courts, in speaking of the subject of the sales tax have used such words as "operating a business" "maintaining a business", "maintaining an occupation" "conducting a business", and one or more of such terms may be found in nearly every case of importance with reference to the said sales tax which has been cited by counsel herein or which has come to our attention; from this it might appear that the Courts of California, in interpreting the term "engaging in business" ascribe to it the same meaning as "conducting any business."

What has been said herein as to the principles of statutory construction and the consequences of a construction that the Legislature of California intended "trustee" to include a trustee such as is here before us applies to the sections defining "retailer" (or "seller") and "business."

The California courts have not construed the term "engaging in business" with reference to a trustee such as is here before us. The definition of "business" herein is of course statutory, and we are to endeavor to apply the legislative definition. Collins v. State of Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439.

Whether said definition is at variance with the accepted and popular meaning of the term "business" we need not say; it is certain that we need not seek further for the conclusion that the trustee here before us is not within the application of the statutory definition in the discharge of his said duties than the opinions above cited of the courts of our own Circuit. Even in the absence of the clear statements in such cases, the use by the California courts, in so many instances of the terms "retail merchant", "occupation", "conducting a business", etc. as hereinbefore set forth, together with our understanding of the general purpose of the Law, would incline us away from any view that the statutory definition of "business" fits the duties of the trustee which are here sought to be taxed.

We would not be fair to conscientious counsel who have presented this matter if we did not notice and comment upon two other points which have been argued here. To do so necessitates adding to this opinion, the length of which has been prompted by the fact that all counsel have urged upon us that the issues tendered in this case are of importance both to the State of California and to those connected with bankruptcy administration and practice.

Counsel for the Board have argued that administrative construction. is entitled to weight in this matter. We agree with that principle, but do not agree that the evidence offered at the hearing before the Referee was entitled to any weight. In the first place, no rulings of the Board in written form were introduced to the effect that a trustee such as is here before us is subject to the Law. Our search of the Administrative Code of California in which we found many rulings of the Board published, disclosed none on this subject. The evidence offered consisted of testimony, partially in effect that the District Tax Administrators had been instructed to apply the Sales and Use Tax Law to a trustee in bankruptcy after an examination of the trustee's sales of tangible property to ascertain if the sales were of a character and number to constitute the trustee a retailer within the purview of the sales and use tax act. In this connection, it was testified that the auditing staff had been instructed that if "two or more sales are made in any taxable period the trustee is to be considered a retailer within the meaning of the Act if the sales are sales at retail, etc." It was also testified that such instructions had been adopted and employed by the Board since the effective date of the California Retail Sales Act.[30]

We do not deem such instructions, apparently given by word of mouth from time to time, evidence of administrative construction to which we are required to give judicial obeisance.

Likewise we are not in agreement with another contention made by counsel for the Board, that the fact the amendment to the Section defining "trustee" was made after the decision in California Pea Products, supra, bears upon the question of whether the Legislature intended to include a trus-

tee in bankruptcy such as that case ruled was not subject to the Law. In the first place, California Pea Products, supra, was decided in 1941; Section 6005 was included in the revision which took place in 1941, effective in 1943, when the Retail Sales Act of 1933 became a part of the Revenue and Taxation Code; the word "trustee" was not inserted until approximately four years after the said decision. Further, had the amendment been aimed at the holding in the California Pea Products it is only reasonable to assume the same would have been worded "trustee in bankruptcy" the words used by the Court as not being included in the section defining person; lastly, since all of the three Ninth Circuit cases we have mentioned herein held that the trustee was not "engaged in business" within the meaning of such definition, it is logical to assume an amendment directed at the holdings in those cases, or any one of them, would have been accompanied by an amendment to the definitions of "retailer" and "business."

Another thought we might mention as bearing on this question is that in 1933, according to the records of our Los Angeles clerk's office the bankruptcy filings were over twice what they were in 1945, leading to the conclusion that if the California Legislature had intended to include a trustee in bankruptcy such as we have before us they would have done so in 1933 when it would have been more profitable to the State than in 1945 when bankruptcy matters were at a comparatively low ebb.

Mention might also be made that we have considered whether by a practical approach to the problem before us we might be justified in construing the Law to include a trustee such as is here before us. We are in sympathy with the statements made by the Courts in the cases cited in the footnote [31] where it has been noticed that equi-

30. It seems to us this construction presents a great difficulty to applying the Law to any trustee selling in liquidation after adjudication under order of court. At a public sale, how could the trustee know in advance whether his sales would be at retail or for resale or whether he would dispose of all the articles to be sold to one person, as one sale? Under the Law, he must have a permit *before* selling as a retailer, yet he would not know, in many instances whether he is a retailer until after the sale.

31. Heyman v. U. S., 6 Cir., 285 F. 685, 687; City of New York v. Jersawit, 2 Cir., 85 F.2d 25, 26.

table considerations should not permit a trustee such an advantage over his competitors as that accorded by immunity from the sales tax. It is also to be observed that demand after demand by state authority upon trustee after trustee, followed by injunction after injunction of the bankruptcy court upon California officers is a state of affairs that should be remedied.

It is not in the power of this Court, were we able, to suggest a practical approach [32] so that the State may derive the revenue it seeks. Such a course would require this Court to legislate, for, as we have heretofore indicated, neither the Bankruptcy Act nor any other statute of the United States has made any provision for the enforcement of the California Sales and Use Tax Law in cases such as this and it is likewise certain that the California Legislature has made none.[33]

Concluding our decision on the question raised by the petition for review, we hold that a trustee selling in liquidation, after adjudication, under order of court is not subject to the sales tax provisions of the California Sales and Use Tax Law.

In discussing the jurisdiction of the Referee to issue the order of injunction from which review is sought, we advert first, to the jurisdiction conferred upon courts of bankruptcy by Section 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, to

"(7) Cause the estates of bankrupts to be collected, reduced to money and dis-tributed, and determine controversies in relation thereto, except as herein otherwise provided * * *

"(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: Provided, however, that an injunction to restrain a court may be issued by the judge only".

Also, to the provisions of Section 62, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 102, sub. a: "(1) The actual and necessary costs and expenses incurred by officers * * * in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

And to the order of priorities for distribution of estates:

Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a

"The debts to have priority, in advance of the payment of dividends to creditors and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) * * * the costs and expenses of administration, * * *

"(2) * * *

"(3) * * *

---

32. It may be that the California Legislators in not including a trustee in bankruptcy such as is before us within the sales tax provisions of the Law felt the problem of avoiding conflict with the Bankruptcy Act involved "pains" not warranted by the amount of revenue to be derived from taxing such trustees in transactions such as are involved herein. We note the language in Nippert v. City of Richmond, 1946, 327 U.S. 416, 434, 66 S.Ct. 586, 595, 90 L.Ed. 760, 162 A.L.R. 844 and quote the same without reference to the holding in said case: "The problem comes down therefore to whether the state or municipal legislative bodies in framing their taxing measures to reach interstate commerce shall be at pains to do so in a manner which avoids the evils forbidden by the commerce clause * * *"

33. It appears to us however anxious the bankruptcy court might be to cooperate with the taxing authorities and vice versa the collision between the Bankruptcy Act and the California Sales and Use Tax Law (the sales tax provisions thereof) at some point would be inevitable—for the court could not surrender its jurisdiction under the Act nor direct the trustee to perform his duties in a manner contrary to the Act, and the Board could not make regulations inconsistent with the law.

"(4) taxes legally due and owing by the *bankrupt* to the United States or any State or any subdivision thereof: * * * And provided further, That, in case any question arises as to the amount or legality of any taxes such question shall be heard and determined by the court". (Emphasis supplied.)

There must also be considered Section 41(1) of Title 28 U.S.C.A., now Section 1341 of Title 28 as revised in 1948, which prohibits the courts from enjoining, etc. the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state.

▮▮▮▮ It is a well established principle that the power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a court of bankruptcy. Steelman v. All Continent Corp., 1937, 301 U.S. 278, 289, 57 S.Ct. 705, 81 L.Ed. 1085, and cases cited. Likewise, that the property of the bankrupt estate is in the custody of said court, and under its exclusive control. Isaacs v. Hobbs Tie & Timber Co., 1930, 282 U.S. 734, 737, 738, 51 S.Ct. 270, 75 L.Ed. 645, and cases cited.

We have heretofore pointed out, the enforcement of the provisions of the portion of the Law herein before us would result in an interference with the control of the bankruptcy court over property in its custody, and an impairment, perhaps a defeat, of the jurisdiction of the bankruptcy court over the matters confided to its authority by the Bankruptcy Act, *unless* there existed a diminution of such authority by Congressional legislation outside of the Bankruptcy Act or a curtailment of such power through judicial interpretation.

We have noted earlier in this opinion that the trustee was not conducting any business within the meaning of Section 124a of Title 28 U.S.C.A. or similar sections of said Title; therefore any diminution of authority of the bankruptcy court or any favored position for state taxes which cases construing said section have indicated resulted by virtue of the conduct of the business, cannot be found herein.[34]

We turn now to Section 41(1) of Title 28 U.S.C.A. for the purpose of ascertaining if such section diminishes the authority of the bankruptcy court with reference to the injunction involved in this case. Referring to Section 2 (7), (15) and Section 62, sub. a of the Bankruptcy Act in connection with said Section 41(1) these questions arise:

What is meant by the terms "examine", "approve", "disapprove" and "pay" as used in Section 62, sub. a? And what is meant by "actual and necessary expenses incurred by officers"? It is of course obvious that if the tax here sought to be collected did not, under the provisions of the Law levying it, apply to the trustee herein, then the tax was not an actual or a necessary expense of administering the estate.

Another question confronts us: If the bankruptcy court cannot enjoin the collection of the tax, how can it "examine", "approve", "disapprove" and "pay" it?[35] In the instant case, the Board had filed no petition for the allowance of the tax as an administrative expense by the bankruptcy court, and, on the contrary had threatened to enforce the provisions of the Law against the trustee and the estate of the bankrupt.

Further, the question is presented with reference to the priority orders of Section 64, sub. a of the Act. If the Bankruptcy court cannot enjoin the collection of the tax, then would not such failure to enjoin result in the collection of such tax, ahead of other expenses of administration, and in full, whether or not funds in the estate permitted payment of other administrative expenses in like measure?

34. See cases cited for Note 24, supra.

35. See Brown v. Gerdes, 1944, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659, indicating that bankruptcy court has sole power to decide what costs of administration are reasonable under Chapter 10 of the Bankruptcy Act; that the duty to find upon this subject is mandatory upon the court, and these requirements cause any conflicting procedure in the state courts to give way.

A comparison with the order of priorities set out in Section 64, sub. a as it stood before the 1926 and 1938 amendments may offer some assistance in ascertaining its present effect. In City of New York v. Saper, 1948, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, the court observed that Section 64, sub. a as it appeared in the Act of 1898 gave taxes owed by the bankrupt absolute priority over claims of any kind; that such taxes need not be proved and it was the duty of the trustee to seek them out and pay them in full. At page 334 of 336 U.S., at page 558 of 69 S.Ct., the Supreme Court stated: " * * * 64, sub. a has been significantly amended to deprive taxes of their preferred status, first by the amendment of 1926, and later by the Chandler Act. The former expressly provided that taxes yield priority to administration expenses and certain wages, neither of which bear interest. The latter amendments finalized the subordination of taxes to other priority items."

At page 337 of 336 U.S., at page 559 of 69 S.Ct. the Court observed that by such amendments "tax claims [have been] deliberately * * * reduced to the level of other debts."

In quoting from said Supreme Court opinion, we are of course keeping in mind the fact that the tax in our case belongs to the class entitled to first priority—administration expenses—and is not a tax claim within the fourth order of priority. We believe however, the inference is permissible that Congress would not have had in mind, when it enacted the amendments to Section 64, sub. a rearranging priority order, that Section 41(1) of Title 28 U.S.C.A. would result in some instances in nullifying such rearrangement or in creating a priority within a priority class.[36]

 Leaving the question of priorities, however, and aside from that question, we are of the view that since the enactment of Section 124a of Title 28 U.S.C.A. and since the Supreme Court in Arkansas Corporation Commission v. Thompson, 1940, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244,[37] overruled

---

36. The trustee could, of course, pay taxes when they accrue without any problem of priorities, provided he was assured of enough funds to pay all expenses of administration in full.

37. In Arkansas Corp. Comm. v. Thompson, 8 Cir., 116 F.2d 179, the taxes involved were property taxes accruing during reorganization of a railroad—expenses of administration. The Court of Appeals, 116 F.2d page 182, held that the bankruptcy court had the power to pass upon such expenses of administration for the purpose of allowance or disallowance; that under Sub. a(4) of Section 64 of the Bankruptcy Act the court could hear and determine validity and amount of such taxes; that Section 41 (1) of Title 28 U. S.C.A. did not relate to administration of bankruptcy estates, and "whether or not there are state laws under which the trustee in bankruptcy might obtain a determination by the state courts of the amount or validity of the disputed state taxes allowable as liens and as part of the cost and expense of administration in bankruptcy is immaterial."

In Arkansas Corp. Comm. v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, as will be noted by the resume of the briefs, 313 U.S. page 133, 61 S.Ct. page 889, the cases of Hennepin County,

Minn., v. M. W. Savage Factories, 8 Cir., 83 F.2d 453; Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, among others were cited on the theory that 64 (a) is not applicable to trustee's taxes. Section 124a of Title 28 U.S.C. A. was cited on this point also. (re refer to briefs filed by counsel in the Supreme Court)

The Supreme Court made no comment as to any difference between taxes accruing as expenses of administration and taxes accruing before bankruptcy and filed as "claims"; Boteler v. Ingels was cited at page 145 of 313 U.S., at page 892 of 61 S.Ct. in a note on another point, as was section 124a of Title 28 U.S.C.A. The Supreme Court also made no comment upon the question of the application of Section 41 (1) of 28 U.S.C.A. regarding injunctions.

Pages 144, 145 of 313 U.S., page 892 of 61 S.Ct. the Court stated: "And there is no more reason to assume that Congress intended that the bankruptcy court should fail to give respect to an unappealed determination of value made by the Arkansas Corporation Commission."

See discussion on question of whether the Arkansas-Thompson case is limited, in its holding, to questions of "amount" of tax as distinguished from "validity", in

the decision of the Court of Appeals reported at 116 F.2d 179, it has become increasingly evident that bankruptcy courts should pause before enjoining the collection of a state tax, *to consider whether they have authority to consider and act upon* the matters urged as justification for such injunction.

Prior to the ruling of the Supreme Court in the case above mentioned, State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, and subsequent cases decided under its reasoning constituted the weight of authority that the bankruptcy court could determine the amount and legality of taxes constituting claims against the bankrupt. By analogy, the same power with reference to taxes against the trustee was reasoned to be present in the bankruptcy court under Section 62, sub. a of the Bankruptcy Act giving the court the right to examine, allow, etc. expenses of administration, and the right to examine and allow, etc., must, as we have pointed out, carry with it for effective exercise, the power to enjoin collection by state authorities.

In instances where the trustee was conducting the business, a difference in the construction as to the authority of the bankruptcy court as to taxes which were administrative expenses has been noted, also as we have pointed out earlier herein.[38]

In Lyford v. City of New York, 2 Cir., 1943, 137 F.2d 782, Circuit Judge Clark discussed the Arkansas-Thompson case, and commented upon the fact that the Supreme Court there dealt only with the power of the bankruptcy court under Section 64, sub. a(4) to consider the legality and amount of taxes; that the question of its authority under the administrative expense section was not discussed, although the tax in-

volved in the Arkansas-Thompson case accrued during the conduct of the business by the trustee. The effect of the Supreme Court decision was, in the Lyford case, commented upon as follows, 137 F.2d page 786: "on the other hand, the effect of the Thompson case is, in any event, to restrict the court to finding if the tax is legally due and to deny it power to review the action of a quasi-judicial taxing body in setting, after due hearing, a valuation of property for tax purposes."

The Court also remarked, 137 F.2d page 787, that the 1937 amendment to Section 41 (1) of Title 28 U.S.C.A. "obviously does not supersede bankruptcy law."

In Quinn v. Aero Services, 9 Cir., Jan., 1949, 172 F.2d 157, 158, reorganization proceedings for a corporation owning both real and personal property were instituted after a date characterized by the Court of Appeals as "the tax and lien date" in California. A tax on the personalty was involved. The Court of Appeals considered the procedure for assessing property taxes in Los Angeles County, and the provisions affording a hearing to taxpayers with reference to such assessments. The opinion cited California cases holding that the County Board in hearing and determining the value of property for assessments discharged judicial functions and that its decision so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of such question.

Referring to the cases of Arkansas Corp. Comm. v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, supra, and Gardner, Trustee v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504, the Court of Appeals felt a correct construction un-

---

Collier on Bankruptcy, 14th Ed. Volume 3, pp. 2077–2082.

See discussion on whether bankruptcy court's power under Section 62, sub. a of the Bankruptcy Act is affected by the ruling in said case, article by Reuben G. Hunt, Commercial Law Journal, May, 1942, 141.

See January, 1950 issue of Journal of National Assoc. Referees in Bankruptcy re necessity for legislation on revitalizing power of court to hear and determine

legality of tax claims; and regarding pending legislation.

38. See cases cited in Note 24.

See also Baltimore Trust v. Interocean Oil Co., D.C., 30 F.Supp. 560, 562, where Judge Chesnut held that Section 124a of Title 28 U.S.C.A. applied to taxes on real property held by a trustee conducting the business, and where state law made taxes a lien, the taxes were preferred expenses of administration.

der both cases to be, 172 F.2d page 160: " * * * that an assessment is res judicata after a judicial review of the administrative act, whether or not the taxpayer has actually appeared, if, in fact, there is provision in the law for such review and the taxpayer has had a full right to appear and participate in such review. If by choice he does not avail himself of it, the assessment is final. * * * " [39]

In Goggin v. Byram, 9 Cir., Feb. 1949, 172 F.2d 868, certiorari denied 338 U.S. 819, 70 S.Ct. 62, a tax on personal property accrued while the debtor and the trustee were conducting the business under court order. The trustee did not apply to the County Board for reduction of the amount taxed; the Referee in Bankruptcy reduced the amount of the tax, and allowed the balance as an expense of administration; the District Court on review ruled the tax should be paid in full as an expense of administration.

The Court of Appeals held that the second proviso of Subdivision a(4) of Section 64 of the Bankruptcy Act confers no authority on the court to reduce the claim unless the tax exceeds the value of the bankrupt's property, and such was not the case; also, it was in agreement with the district court that the abandonment of the pledged property did not operate to avoid the personal liability for taxes accrued while the debtor and trustee were conducting the business pursuant to court order. The Court stated further, 172 F.2d page

870: "We find nothing in the Act which relieves the trustee or debtor in possession from the payment of current taxes as they accrue. Cf. Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442; Swarts v. Hammer, 194 U.S. 441, 24 S.Ct. 695, 48 L. Ed. 1060; United States v. Killoren, 8 Cir., 119 F.2d 364." [40]

Lastly, the Court observed, 172 F.2d at page 870, citing Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, and Quinn v. Aero Services, Inc., 9 Cir., 172 F.2d 157, that the bankruptcy court is given no authority to redetermine an assessment or to divide it arbitrarily after it has been quasi-judicially determined pursuant to state law; that the trustee should have sought his remedy, if any he had, by application to the County Board.

We do not believe the holding of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, supra, as construed in Quinn v. Aero Services, 9 Cir., 172 F.2d 157, or as construed in Goggin v. Byram, 9 Cir., 172 F.2d 868, supra, is applicable to our case. A different situation exists in each of the three cases, and a different situation exists between those in each of the three cases and the case at bar.

We do not take the language of Goggin v. Byram, 9 Cir., 172 F.2d 868, as meaning that the bankruptcy court has no authority to examine, approve or disapprove a tax where the validity of the application of the tax

39. See also In re Chicago Rys. Co., 7 Cir., June, 1949, 175 F.2d 282, 287, certiorari denied 338 U.S. 850, 70 S.Ct. 94. Paragraphs numbered 5, 6, and 7 construing the Arkansas-Thompson case; question of taxes and violation of state constitution involved.

40. In Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, trustee conducting business operated vehicles without paying license fees. Court held trustee operating business liable to taxes and penalties in same manner as individual, etc., under Section 124a, 28 U.S.C. A. and sustained Court of Appeals decision that vehicles were subject to lien of State. *But note*, under State law the lien attached as of due date upon use of vehicle.

In U. S. v. Killoren, 8 Cir., 119 F.2d 364, certiorari denied 314 U.S. 640, 62 S.Ct. 78, 86 L.Ed. 513, the assets of the estate were insufficient to pay all claims. The estate had been in reorganization, and the bankruptcy court ordered the expenses of liquidation, as distinguished from the expenses of operation, paid in such order. The tax claim of the United States *was incurred during the period of* operation. Court ruled claims accruing during both periods were expenses of administration and should be paid on a parity with those mentioned in Subdivision a (1) of 64; that all such expenses, including the tax due the United States must share *pro rata* in the funds available for payment.

670

to the trustee is in question, where the tax is an expense of administration, not incurred by a trustee conducting any business within the meaning of Section 124a of Title 28 U.S.C.A. Were we to attribute such meaning to that opinion, the ruling in the Goggin v. Byram case still would not apply here, for the opportunity offered the trustee herein for judicial review was not the same.[41]

In Corbett v. Printers & Publishers Corporation, 9 Cir., 1942, 127 F.2d 195, the Court of Appeals, in a suit for injunction brought by a Nevada Corporation doing business in California, considered the sales tax provisions of the Law here involved. The court noted the fact that the tax was payable quarterly and that a separate action must be brought for the tax due each quarter, but held the payment under protest and suit for refund as provided by the Law constituted a plain, speedy and efficient remedy for said corporation in the courts of California, as contemplated in Section 41 (1), 28 U.S.C.A.

We are also mindful of the decision in People v. West Pub. Co., Cal.Sup., April 1950, 216 P.2d 441; there the Supreme Court of California considered the use tax provisions of the Law; the corporation failed to present to the Board its contentions that the use tax levied should be reduced because of the running of the statute of limitations, because of certain set-offs claimed, and lastly, the corporation's contention that the tax on its mail-order sales was violative of the Commerce Clause. The Court observed, 216 P.2d pages 445, 446,

that in the effective performance of its designated functions under the terms of the "Use Tax Act" the Board necessarily must pass upon matters of both law and fact, and though "the 'administrative determination of questions of law is subject to judicial review upon which the courts may substitute their own judgment,'" the Board "nevertheless should be afforded the opportunity to rectify any determination it has made and consider a revision of its tax assessment." The Supreme Court stated that the foreign corporation should have exhausted its administrative remedy, and refused to consider the set-offs, but nevertheless considered the constitutional question, and the defense of the statute of limitations and ruled upon such questions on the merits.

A decision as to whether this particular trustee in this particular situation had a plain, speedy and efficient remedy herein cannot be predicated upon cases involving foreign corporations and the California Sales and Use Tax Law, nor upon cases involving trustees in bankruptcy and other state taxing statutes.

Assuming the trustee herein had applied to the Board for a redetermination; assuming the Board had considered the questions we have here discussed; assuming the Board had arrived at conclusions identical with ours; the Trustee would then have been precluded from proceeding further to secure a judicial determination of the matter, and there is no assurance that his similar sales, if any, made in another taxing period would have received a similar construction,[42] or that the State would have been bound by such an exemption.[43]

---

41. See: Drummey v. State Board of Funeral Directors and Embalmers, 1939, 13 Cal.2d 75, 87 P.2d 848, 852, and Greif v. Dullea, 1944, 66 Cal.App.2d 986, 153 P.2d 581, 593, and Standard Oil Co. of California v. State Board of Equalization, 6 Cal.2d 557, 59 P.2d 119, distinguishing between local boards, such as boards of supervisors who sit as boards of equalization to hear assessments, and State Board of Equalization, holding former, and not latter, exercise judicial or quasi-judicial functions.

42. See Section 7176. Determination of any case res judicata only for same quarterly period.

43. See American Distilling Co. v. State Board of Equalization, 1942, 55 Cal.App. 2d 799, 131 P.2d 609, to effect that Legislature may delegate authority to Board to make rulings, but Board may not make exemption contrary to the Law; in all cases the rules and regulations may be tested by the courts to determine whether they are reasonably directed to accomplishment of the purpose of the statute under which they are made.

Or, assuming the Board had arrived at the conclusion so strongly urged by its counsel herein that the trustee was liable under the statute, access to the state court for a judicial determination of such liability could have been obtained only upon the conditions of a surrender, by the bankruptcy court, of some portion of the property of the estate in custody of the latter court for payment under protest; also, there would have been a delay in the administration of the bankruptcy estate, and a depletion of the funds of the estate for cost of litigation attendant upon a trial possibly to be held at a point over five hundred miles distant from the place where this controversy arose.

It is therefore obvious that if it can be said that Section 41(1) applies to circumstances such as are present here, the trustee herein had no plain, speedy and efficient remedy in the courts of the State of California within the meaning of said statute.

We have noted the opinions in the cases cited in the footnote indicating the desirability of obtaining a state construction where possible, in matters involving unsettled questions of state law, even where the federal court has unquestioned jurisdiction.[44] A construction of the highest court of California would have been of benefit here, but we doubt if considerations of comity would, or could, outweigh the difficulties herein mentioned which would attend obtaining such construction. In the instant case, the trustee was already barred, at the time he applied for the injunction, by

See also Crane Co. v. Arizona State Tax Commission, 1945, 63 Ariz. 426, 163 P.2d 656, 662, 163 A.L.R. 261, to effect a state may not be estopped by unauthorized exemption made by administrative officers re applicability of excise tax; See also Arizona State Tax Commission v. Frank Harmonson, etc., 63 Ariz. 452, 163 P.2d 667, page 668, that administrative officers have no power to grant exemption not found in statute.

See People v. Universal Film Exchanges, Jan. 1950, 34 Cal.2d 649, 213 P.2d 697, where Supreme Court reversed on the ground of running of statute of limitations, decision in People v. Universal Film Exchanges, Cal.App.1949, 204 P.2d 401, where action was brought regarding a tax due approximately ten years before; Board had accepted returns; court held even if manner of filing returns was due to administrative interpretation Board could not adopt rules and regulations which were erroneous construction of statute.

Also, Lewis v. Utah State Tax Commission, Utah, May, 1950, 218 P.2d 1074, where ruling of Commission that certain railroad was exempt from the Utah sales tax was held no defense against deficiency tax later assessed by Commission.

44. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876:
"A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of State property law. * * *"

See Ernst v. Oberferst, 2 Cir., 1948, 166 F.2d 519, where Court of Appeals stated bankruptcy court could fix reasonable rent for trustee's occupancy, or refer matter to court; the law in question was a state rent stabilization act. "There can be no question but that the bankruptcy court must act ultimately to set the allowance to be made for what is one of the expenses of the bankruptcy administration, one which the court might conceivably set at a less amount than the statutory maximum." 166 F.2d page 523. And at page 524 of 166 F.2d: "resort to the state court is to be dictated by considerations of wise comity, * * * rather than by any absolute requirement of jurisdiction, and that the bankruptcy court may itself take full jurisdiction if in the exercise of a wise discretion it finds such a course to be desirable." Citing Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S. Ct. 628, 84 L.Ed. 876; Mangus v. Miller, 317 U.S. 178, 63 S.Ct. 182, 87 L.Ed. 169; Gardner v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504. See also Stout v. Green, 9 Cir., 1942, 131 F.2d 995.

See Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, where court in remanding case with instructions to secure a state decision with reference to what aspect of interstate commerce the state sought to tax, specifically noted an action for declaratory relief was available in the state court.

the provisions of the taxing statute, from proceeding toward the state courts.

We hold that the Referee had jurisdiction to issue the injunction herein and that the same was proper.